[2] Taking the facts admitted by the demurrer in connection with the provisions of the agreement which is annexed to the complaint, the following propositions appear to be established: (1) That plaintiff agreed to allow the defendant to cut a door through the wall of his building, which was not fireproof, and to use the stairway as one of the exits from defendant's fireproof theater. (2) That the plaintiff's building, or a part thereof, if used as contemplated by the contract, would be used as a theater, or for the use of an audience or portions of an audience. (3) That the Building Code provides that all stairways, openings, structures, and all parts of any such structures used for any theatrical purpose, or as a theater, or for the use of any audience or portions of an audience, shall be completely fireproof.

Assuming, as we must, that these propositions are correct, it necessarily follows either (1) that the defendant must rebuild the whole of the plaintiff's building, so that it should be a fireproof structure, which the contract does not contemplate it should do; or (2) that the contract, if carried out, would involve an illegal and unlawful use of the plaintiff's building. The Building Code of the city of New York has the force of law, and any contract made in violation of its provisions is void. Burger v. Koelsch, 77 Hun, 44, 28 N. Y. Supp. 460. Under the contract the defendant was required to do a thing which cannot be done without a violation of the law, and it follows that such an obligation is void.

[3] Nor does the fact that at the time the contract was made the parties knew the law alter the situation in any respect. For the purpose of this appeal we must assume that the answer correctly sets forth the provisions of the Building Code. If these provisions are not as comprehensive as they appear to be from the allegations of the answer, that fact will appear upon the trial of the action. In determining the issue raised by the demurrer, we must assume that the allegations of the defense are true.

We think that the learned court below was right in holding the defense alleged to be sufficient in law and in overruling the demurrer interposed thereto.

The judgment appealed from should be affirmed, with costs. All concur.

---

(70 Misc. Rep. 354.)

HUMPHRYES MFG. CO. v DAVID WILLIAMS CO.

(Supreme Court, Special Term, New York County. January, 1911.)

1. CONTRACTS (§ 10*)—VALIDITY—MUTUALITY.

A contract authorized a publisher to insert an advertisement in a paper for one year for a certain price. The contract was signed by both parties, and a copy thereof given to each. The publisher began the publication of the advertisement, and continued it for several months; the advertiser carrying out the agreement. Held, that the contract was not void for lack of mutuality.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. SPECIFIC PERFORMANCE (§ 73*)—CONTRACT—CONSTRUCTION.

An agreement authorizing a publisher to insert an advertisement for a certain time for a certain sum is not a contract for personal services, which cannot be specifically enforced.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 206–208; Dec. Dig. § 73.*]

Action by the Humphryes Manufacturing Company against the David Williams Company. Demurrer to complaint overruled.

R. Taggart, for plaintiff.
W. P. Martin, for defendant.

GUY, J.   The defendant herein demurs to the complaint, on the ground that it fails to set forth sufficient facts to constitute a cause of action. The complaint sets forth substantially that on or about the 18th day of March, 1897, the plaintiff, a manufacturing corporation, entered into an advertising contract with one Williams, publisher of the Iron Age, whose obligations were subsequently assumed by the defendant corporation, a copy of which contract is annexed to the complaint and is in the following form:

"David Williams, Pub., New York; Henry Smith, Mgr., Cincinnati. You are authorized to insert our advertisement in the Iron Age for one year from date, and thereafter until otherwise instructed, for which we agree to pay $350.63, reserving the right to discontinue at any time by paying the rate charged for space used and times inserted; also to change advertisement as often as desired without extra charge. To avoid possibility of a misunderstanding, every condition of this order must be written on its face, and the publisher reserves right of declining to accept any order which, from its terms or otherwise, he may deem objectionable."

The complaint further alleges that the contract was executed in duplicate; that one of said duplicates was signed by the publisher, Williams, and delivered to the plaintiff; that the other of said duplicates was signed by the plaintiff and delivered to said Williams, "the two constituting the agreement between the parties"; that immediately after the making of said contract said Williams printed in the Iron Age plaintiff's advertisement, and that said advertisement was continued by defendant as publisher of the Iron Age till on or about the 1st day of September, 1910, at which time defendant discontinued the printing thereof; that the plaintiff has paid all sums due under said contract, has never instructed defendant to discontinue said advertisement, but, on the contrary, has requested defendant to continue the same after the 1st day of September, 1910, and protested against the discontinuance thereof; that many of plaintiff's patrons take the Iron Age; that the advertisement therein was of great value to plaintiff in its business; that plaintiff relied upon its contract with defendant to advertise its business; that it cannot secure an advertisement in any other trade journal to take the place of the one discontinued; that by reason of said discontinuance plaintiff has lost and will continue to lose business; and that plaintiff has no adequate remedy at law against defendant to recover damages therefor. Wherefore plaintiff prays that defendant may be compelled to insert in said

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

journal—the Iron Age—the advertisement of plaintiff as provided in and by said contract, upon the payment by plaintiff of the amount therein named, until such time as the plaintiff shall direct said defendant to discontinue the publication of said advertisement, and that an injunction may issue enjoining the defendant from refusing to carry out the terms and provisions of said contract and from refusing to insert plaintiff's' advertisement in said journal.

[1] The defendant, in support of its demurrer, contends that the alleged contract lacks mutuality, and is merely an authorization or a continuing offer, which could not be enforced by defendant and is not, therefore, enforceable in equity against the defendant. In my judgment this contention is not well founded. The document was executed in duplicate, one of said duplicates being retained by each of the parties, and subsequently there was part performance on the one hand and payment on the other. It imposed obligations upon both of the parties thereto, the obligation on the part of the publisher to print plaintiff's advertisement for one year "and thereafter" until discontinued by plaintiff, and the obligation on the part of the plaintiff, enforceable by defendant, to pay the agreed price for such advertising so long as the publisher continued to print the same, until discontinued by the plaintiff.

[2] Defendant further contends that, even if the document in question constituted a binding contract, it was a contract for personal services which will not be specifically enforced by a court of equity. In support of this contention the defendant cites Ware Bros. Co. v. Cortland C. & C. Co., 192 N. Y. 443, 85 N. E. 666, 22 L. R. A. (N. S.) 272, 127 Am. St. Rep. 914. The case cited, however, merely declares the rule that, for the purpose of an action at law to recover damages for the breach of such a contract, a contract for advertising is analogous to or to be treated as a contract for personal services, so far as the measure of damage is concerned. I do not think, however, that the learned court intended to lay down the rule that a contract for advertising shall be deemed to be such a contract for personal services, involving confidence and trust, the delegation of authority, or the necessity for the maintenance of amicable relations, as a court of equity will ordinarily refuse to enforce. The mere fact that the defendant herein is a corporation would seem to render such a view of the contract in question impossible. But, even if the decision were to be so construed, I am of the opinion that the service which the publisher in this instance undertook to render to plaintiff was, in view of the character of defendant's publication and the necessary reliance upon advertising therein by plaintiff to maintain its business, of such a unique character as to take it without the rule.

The other points urged on behalf of the defendant are based upon what I deem to be the erroneous view that the contract in question is such a contract for personal services as will not be enforced by a court of equity.

For the reasons above stated, the demurrer is overruled; the defendant to have 20 days within which to serve an answer.

Demurrer overruled; defendant to have 20 days to serve an answer.