(No. 18865.—)

MARTIN THEODORE ANDERSON, Appellee, *vs.* C. M. BILLS *et al.* Appellants.

*Opinion filed June 19, 1929—Rehearing denied October 2, 1929.*

HARRY E. BROWN, and ARTHUR G. HIGGS, for appellants.

HENRY WATERMAN, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

¶ Appellee, Martin Theodore Anderson, filed his bill in the circuit court of Henry county against appellants, C. M. Bills and F. A. Snodgrass, for the specific performance of a written contract for the sale of real estate. The cause was referred to a master to take the evidence and report his conclusions. The master recommended a decree as prayed, exceptions to his report were overruled, a decree was entered in favor of appellee, and an appeal has been prosecuted to this court.

Appellants were real estate agents at Geneseo, Illinois. They were selling farm land in Henry county but were not partners. Appellee wanted to buy eighty acres belonging to John A. Carlson. Appellee asked Snodgrass if he had the land for sale, and Snodgrass replied that he did not but that he would see Carlson about it. Bills had previously had the land for sale. On July 27, 1920, appellee and his brother-in-law, Arthur A. Swanson, met Snodgrass at the Geneseo Stock Yards. Snodgrass told appellee that Carlson wanted $500 per acre for the land. Appellee said it was too high. There was considerable conversation, dur-

ing which Bills arrived. He asked appellee if he would be willing to buy the land if appellants would sign a contract to take it over if appellee became dissatisfied with it. During the afternoon of the same day Snodgrass met appellee, his wife and Swanson at the bank in Geneseo. Snodgrass then had a contract of sale, signed by Carlson, for $39,000. Appellee asked Snodgrass about the contract which he and Bills had promised to execute if appellee bought the land. Snodgrass sent for Bills, who drew the following contract:

"Geneseo, Illinois.
*July 27, 1920.*

"This is to certify we C. M. Bills & F. A. Snodgrass agree to by or take back the 80-acre farm recently bought of John Carlson the East half of the North west quarter of Sec 26—T P 17 N. Range 3 East for the amt we pd for it $39000 & pay for the permanet improvements we put on in any fall during 5 year from this date

C. M. Bills,
F. A. Snodgrass,
M. Theo. Anderson."

After this contract was executed appellee signed the contract with Carlson. Appellee asked appellants whether his wife should sign the contract with Carlson, as she was furnishing some of the money and the title was to be taken partly in her name, and appellants stated that it was not necessary. Appellee paid Carlson $1000 and on March 1, 1921, he paid $38,000, and a deed was executed by Carlson to appellee and his wife. Carlson paid a commission of $160 to Snodgrass for making the sale. Appellee went into possession and remained in possession until the bill was filed.

In February, 1921, appellee had the contract drawn by Bills re-written by a lawyer, as follows:

"This agreement entered into this 27th day of July, 1920, by and between C. M. Bills and F. A. Snodgrass, parties of the first part, and M. Theo. Anderson, party of the second part:

"Witnesseth, that whereas parties of the first part have this day sold to party of the second part, for the sum of thirty-nine thousand

dollars ($39,000), the east half (E ½) of the north west quarter (NW¼) of section twenty-six (26), township seventeen (17) north, range three (3) east of the 4th principal meridian, Henry county, Illinois, said parties of the first part acting in such transaction as the agents of John Carlson, the former owner of said land.

"And whereas, part of the consideration for said thirty-nine thousand dollars ($39,000) paid by party of the second part, .was the agreement by parties of first part to purchase said land from party of the second part, within five years should he declare to sell.

"Now therefore, in consideration of the premises, and for other valuable consideration, in hand paid, parties of the first part hereby agree to purchase from party of the second part the above described land, for the sum of thirty-nine thousand dollars ($39,000), at any time within five years from this date, that by notifying parties by September 1 of any year they receive notice from party of the second part that he desires them to take said lands. Parties of the first part further agree to reimburse party of the second part for any permanent improvements he may put onto said land during said five year period, should he sell said land to them.

"In witness whereof, we have hereunto set our hands and seals the day and year first above written.

C. M. BILLS, (Seal)
F. A. SNODGRASS, (Seal)
M. THEO. ANDERSON. (Seal)"

After the contract was re-written appellee took it to Bills, who signed it, apparently without reading it. He then presented it to Snodgrass, who changed one clause and signed it. This is the contract upon which the bill is based. Appellee claims that in the fall of 1922 he concluded to avail himself of his option and so notified appellants. About two weeks later appellants went to appellee's house, and appellee testified that they offered to make a trade with him. As to this part of the conversation appellee is corroborated to a certain extent by Snodgrass. Bills testified that he offered to re-purchase the land, which is denied by appellee. Bills admitted that he did not offer appellee any money. Appellants claim that in October, 1922, they requested appellee to sell the farm to them, stating that they could dispose of it at that time without any material loss

to them; that appellee refused, and appellants then told him that if he did not sell the farm to them at that time they would no longer be bound by the contract and that they revoked the same. Between August 22, 1923, and March 1, 1924, appellee notified appellants three times of his election to exercise his option, he tendered deeds, abstracts of title and tax receipts and demanded his money, but appellants refused to perform the contract and the bill was filed.

Appellants contend that the land was conveyed to appellee and his wife as tenants in common; that the wife was not a party to the contract sought to be enforced and was not a party to the suit; that the contract cannot be enforced because it is lacking in mutuality of obligation and remedy, and that appellants could not maintain a bill against the wife to compel performance, therefore appellee cannot maintain a bill against appellants. The general rule is that specific performance will not be decreed where the rights and remedies of the parties are not mutual, and where the party against whom specific performance is sought cannot have, as a return for such performance, all that he contracts for in the original agreement. (*Wurn v. Berkson,* 305 Ill. 231.) This rule of mutuality applies to executory contracts in which there are mutual rights and obligations to be performed by each of the parties, but the rule does not apply to option or unilateral contracts. In Page on Contracts (2d ed. sec. 571,) it is said: "An option is said to be a unilateral agreement binding upon the party who executes it from the date of its execution, and it becomes a contract *inter partes* when exercised according to its terms; an exclusive privilege to buy; a continuing offer binding for the time specified on the one who makes it but not on the one to whom it is made unless he accepts; or an obligation by which one binds himself to sell and leaves it discretionary with the other party to buy." The contract in this case was an option or unilateral contract and by its terms it was binding upon one party alone and could be specifically en-

forced against that party. (Pomeroy on Specific Performance, (3d ed.) sec. 169, p. 439.) An option agreement to convey, without a corresponding obligation or covenant to purchase, will be specifically enforced in equity if made upon sufficient and valuable consideration. (*Anderson* v. *Anderson*, 251 Ill. 415; *Guyer* v. *Warren*, 175 id. 328.) In *Mason* v. *Caldwell*, 5 Gilm. 196, it was held that equity may enforce the specific performance of a contract of sale of land even though the vendor has no title to the land at the time of the sale, or even at the time of the filing of the bill for specific performance, provided he is in a position to convey a good title at the time the decree is entered. In *Cohen* v. *Segal*, 253 Ill. 34, it was held that the weight of authority is that the vendor is only required to be able to convey at the time the decree is entered. Where a contract is made by a husband and is not signed by his wife it may be enforced by the husband if a deed signed by the wife is tendered. (*Mikelaiczak* v. *Kruppa*, 254 Ill. 209; *Wagner* v. *McClay*, 306 id. 560; *Firebaugh* v. *Wittenberg*, 309 id. 536.) Appellee tendered to appellants a warranty deed signed by himself and his wife. Appellants under this deed would acquire the exact title for which they contracted, and the contract was not void because it was lacking in mutuality.

Appellants insist that the contract cannot be enforced because it was not founded upon a valuable consideration moving from appellee, for whose benefit the performance was sought; that the court will inquire into the real consideration notwithstanding the fact that the contract is under seal; and that a unilateral or option contract not based upon a valuable consideration may be revoked at any time before acceptance. In support of these claims it is contended that there are two contracts in this case—one executed about the time of the sale and the other about nine months later; that the bill was based upon the second contract, and even if it is conceded that there was a consideration for the first contract there was no consideration for the second. A val-

uable consideration consists either of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. (1 Page on Contracts, (2d ed.) sec. 514; *People* v. *Commercial Life Ins. Co.* 247 Ill. 92; *Buchanan* v. *International Bank,* 78 id. 500.) At the time the first contract was entered into appellee wanted to buy the land. It had been in the hands of Bills for sale. Snodgrass claims he never had it for sale. Appellee talked to Snodgrass about purchasing it. Snodgrass immediately got in communication with the owner and began negotiations. It was through his efforts that the sale was consummated. He reported to appellee that the owner wanted $500 per acre. Bills asked appellee if he would be willing to buy for $39,000 provided appellants agreed to re-purchase at that price at any time within five years. Appellee did not at that time agree to this arrangement, but Snodgrass immediately got in communication with the owner and secured a contract for $39,000. He then called appellee and his wife and the first contract was entered into between appellants and appellee, in which appellants agreed to re-purchase at any time within five years for $39,000. Appellants were real estate agents. They were trying to make a trade. The evidence shows that the owner paid $160 commission for the trade. It is claimed that this money only went to Snodgrass and that Bills received no part of it, but under all the facts in evidence there was a sufficient consideration for the execution of the contract. The second contract, which was under seal, recites that appellants sold the land to appellee; that appellants were acting as the agents of the owner; that a part of the consideration for the $39,000 paid by appellee was the agreement of appellants to re-purchase the land from appellee; and that in consideration of the premises, and for other valuable consideration in hand paid, appellants agreed to re-purchase from appellee. In *Rohling* v. *Thole,* 256 Ill. 425, Rohling owned land which he sold to Thole

on November 16, 1909. Thole executed an agreement giving Rohling the right to re-purchase by March 1, 1912. Subsequently a new agreement was prepared, which stated a consideration of one dollar, which was not paid. The new agreement was made for the purpose of having it executed by the wife of Thole, and it was signed by her about a month after the original contract was signed. Upon the refusal of Thole to re-convey in accordance with the provisions of the contract a bill for specific performance was filed and a decree was entered as prayed in the bill. On page 428 this court said: "It seems clear from the evidence that the agreement to re-convey the land to Rohling was a part of the contract of sale to Thole and a part of the consideration for the conveyance, and that it was not merely a voluntary option that might be rescinded by Thole at his will. The second agreement was not a new agreement to re-convey the land to appellee, but was merely a re-statement, in writing, of the original agreement, for the purpose of having the wife of Thole sign it. It was not based upon a supposed consideration of one dollar recited therein, but upon the consideration for which the agreement of November 16, 1909, was entered into between the parties. It was a valid, binding agreement requiring Thole to re-convey the land to appellee upon his compliance with the terms and conditions stated in the instrument." In the case at bar the execution of the original contract was a concurrent act with the purchase of the property. It was by reason of this contract that appellee was induced to purchase the property. The contract as originally drawn was short and indefinite. Later appellee had a new contract drawn which contained substantially the same provisions as the original contract but in more explicit terms. Under ordinary circumstances an option agreement based upon a consideration or upon a contract under seal is irrevocable before the expiration of the time agreed upon for its execution. (*Wagner* v. *McClay, supra.*) There was a consid-

eration for the contract, and appellants had no right to refuse performance because they had, prior to the expiration of five years, offered to buy and appellee had refused to sell.

Appellants complain that at the time the new contract was executed appellee did not correctly state to Bills the contents of the instrument which he signed and that the signature of Bills was obtained by fraud and deceit. There is no merit in this contention. After the second contract was prepared appellee took it to Bills, who voluntarily signed it, as he claims, without reading it. He had full opportunity to examine it if he saw fit but did not improve his opportunity. No deception was practiced to obtain his signature, there is no substantial variance in the terms of the two instruments, and the second contract was binding on appellants.

The whole controversy seems to be based upon the claim that the value of the land declined, and it is insisted by appellants that a court of equity will not specifically enforce a contract where there has been a decrease in the value of lands. Only one case is cited in support of this contention and it does not sustain the contention. It has been held in several cases that specific performance may be decreed even though there has been a decrease in the value of the land contracted to be sold. *Allen* v. *Hayes,* 309 Ill. 374; *Anderson* v. *Anderson, supra; Fuller* v. *Bradley,* 160 Ill. 51.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*