JOHN T. YODER *et al.*, Plaintiffs-Appellants, *v.* THE ROCK ISLAND BANK, Defendant-Appellee.

Third District   No. 76-325

Opinion filed April 14, 1977.

Joel A. Deutsch, of Rock Island, for appellants.

H. Reed Doughty, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal was instituted by the plaintiffs, John T. and Joyce F. Yoder, after the Circuit Court of Rock Island County entered judgment in favor of the defendant, The Rock Island Bank, in a specific performance action. In addition, in a foreclosure case consolidated with the specific performance action, the trial court awarded a judgment to The Rock Island Bank against the Yoders, entering a decree of foreclosure.

In July of 1973, Yoder executed three separate construction mortgages to the bank on Lots 1, 2 and 5 in Timothy Sirkl Second Addition to Coal Valley, Illinois. These three mortgages were placed of record. The bank did advance money on the house being constructed on Lot 1, but no money was ever advanced on the mortgages on Lots 2 and 5.

In early November of 1974, Mr. Yoder discussed these particular mortgages and his financial obligations that were then due and owing to the bank with Mr. Arvid Johnson, who was the vice president of the bank and in charge of the bank's real estate loan department. At that time, Mr. Johnson advised Yoder to have his attorney send him something in writing with respect to this problem. This was done, and in response to this letter, the Yoders' attorney, Sidney S. Deutsch, was referred to the bank's attorney, Mr. H. Reed Doughty. He spoke to Mr. Doughty about this, but he wanted something in writing.

Thereafter, Mr. Deutsch received a letter from Mr. Doughty dated November 29, 1974. In this letter Mr. Doughty stated that he discussed Deutsch's letter with Mr. Arvid Johnson. The letter continued:

"* * * It would appear to me that we can make a resolution of Mr. Yoder's problems with the bank as follows:

Previously, your client has offered to convey good title to the bank of Lot 1 in Timothy Sirkl, 2nd Addition, to the bank in exchange for a release on the mortgage thereon, together with a release by the bank of the judgment obtained against your client in cause 74 LM 7.

In addition to this the bank will agree to release the mortgages on Lots 2 and 5 of the same addition. I must emphasize, however, that clear title must be provided to the bank for Lot 1 if this is to be accomplished. If your client is willing would you please advise at your earliest convenience and furnish me with abstract of title or commitment for title insurance 'owners policy.' If he is not willing we will proceed to foreclose the mortgage on Lot 1."

Since both Deutsch and Doughty were possible witnesses, the case was tried by other counsel. Deutsch, testified that after he received the letter of November 29, 1974, he called his client into the office and then called Doughty, explaining that the Yoders were going to go ahead and do what was necessary. Doughty testified that he has no recollection of Deutsch contacting him after his letter of November 29, 1974. He does, however, admit that he did receive a commitment for a title insurance policy, but he can't remember the date of receipt. The effect date on the schedule of commitment appears to be December 9, 1974.

Doughty further testified that, after writing the letter, he had a conversation with Mr. John Miller, who was then the president of The Rock Island Bank. Miller had discussed this matter with Johnson and learned of the terms of the letter which had been written to Yoder's attorney on November 29. Miller advised Doughty that he was unhappy with those terms and that he wanted to cancel or revoke the terms set forth in the letter of November 29. As a result of this conversation Doughty wrote a letter on December 20, which stated that Miller did not wish to proceed in accordance with the suggestions made in the letter of November 29, 1974.

Deutsch testified that after obtaining the commitment for title insurance and after the recording of the deed, which was done by the title company, he called Doughty and informed him that they had a commitment for title insurance, that there was a judgment to the bank that could be taken care of since it was their property. He also testified that in this telephone conversation he commented that the taxes would be taken care of when they got together, that the judgment of the bank could be withdrawn and that, although there may be another mortgage or lien for security for fees due him, that mortgage would also be taken care of, so the defendant would receive clear title. Deutsch further testified, in the same telephone conversation, that Doughty told him that the president had countermanded Johnson and that the offer would be withdrawn. Deutsch replied that Doughty should go back and talk to the president and that they should not run out on a commitment. Doughty stated he would go back and talk to them again. Subsequently Deutsch received the letter dated December 20. That was the last communication Deutsch had with Doughty.

A deed dated December 6, 1974, conveying Lot 1 of Timothy Sirkl Second Subdivision to the Village of Coal Valley, situated in Rock Island County and State of Illinois, from the Yoders to the Bank was recorded at 12:09 p.m. on December 9, 1974, in the Rock Island County recorder's office. This deed was delivered to the abstract company at the time the plaintiffs requested a title policy. A commitment for title insurance was issued, effective December 9, 1974, in the amount of $22,000, an owner's

policy to be issued to the proposed insured, The Rock Island Bank, an Illinois corporation, with fee simple title vested in The Rock Island Bank, an Illinois corporation, to the land referred to as Lot No. 1 in Timothy Sirkl Second Subdivision, located in Rock Island County, Illinois, as of the effective date. Certain exceptions were listed. The taxes for the year 1974 were a lien but were not due and payable. Another exception was the taxes for 1973 in the amount of $58.59, which are unpaid. Likewise, a release of the mortgage recorded July 11, 1973, by The Rock Island Bank was required, as well as a release of the judgment of The Rock Island Bank versus John Yoder, Case No. 74 LM 7. The commitment is signed by The Rock Island County Abstract Title & Guaranty Company representatives for Chicago Title Insurance Company. This commitment was received by the bank's attorney, Mr. Doughty, who had a copy of the commitment in his file. However, the title company apparently missed a mortgage from the Yoders to Deutsch. Doughty discovered Deutsch's mortgage after the lawsuit was filed. That mortgage, in the amount of $5,270 covering Lots 1, 2, 3, 4, and 5 of Timothy Sirkl Second Subdivision to the Village of Coal Valley, situated in the County of Rock Island and State of Illinois, except that portion of Lot 5 which has been deeded to Dwaine C. Halverson, dated October 26, 1973, filed October 30, 1973, in the recorder's office of Rock Island County, Illinois, in Record Book 580, page 220, Document No. 746721, has not yet been released, but Deutsch has acknowledged in open court that he would release it without receiving consideration from the bank.

The evidence presented by the bank indicated that the amount of the principal balance left on the Lot 1 mortgage was $17,973.90, the total amount of money paid out by the bank. Adding interest, there is a total due on the mortgage of $21,003.45.

It was stipulated by the bank that the only issue was the outcome of the specific performance action. If relief was denied in that case, then it is stipulated that the bank was entitled to a decree of foreclosure. Therefore the only issue raised on review is whether the trial court erred in refusing to grant specific performance to the plaintiffs. The underlying, and controlling, question is whether there was a contract which could be specifically enforced.

■■ It is the most elemental principle of law that, for a contract to come into existence, there must have been an offer and an acceptance. If the offer does not specify a particular mode of acceptance, the offer may be accepted by a performance of the desired acts. (*Central National Bank & Trust Co. v. Consumers Construction Co.* (2d Dist. 1972), 5 Ill. App. 3d 274, 282 N.E.2d 158.) Nevertheless, the acceptance must conform exactly to the terms of the offer. *Brook v. Oberlander* (1st Dist. 1964), 49 Ill. App. 2d 312, 199 N.E.2d 613.

The purported offer in this case recited that the acceptance be made either by advising the bank's attorney that the Yoders were willing to transfer the land in exchange for a release of the mortgage or by furnishing this same attorney with an abstract of title or a commitment for title insurance. There is a dispute in the facts as to whether Deutsch informed Doughty by telephone of the plaintiffs' acceptance of the purported offer. However, there is no dispute that Doughty's file contained a commitment for title insurance, or that the deed was recorded prior to the defendant bank's December 20 withdrawal letter. Therefore, if the letter of November 29 conveyed an offer, there was clearly an acceptance which conformed *exactly* to the terms of the offer.

The defendant argues that the letter was not an offer. Rather, the argument continues, it was merely one step in a negotiation process. "It is not enough to show that an agreement of some kind existed between the parties, or even that it has in whole or in part been performed by the plaintiff, but the contract must be clear, certain and unambiguous in its terms, and give an absolute right without further negotiations." *Milani v. Proesel* (1958), 15 Ill. 2d 423, 430, 155 N.E.2d 38, 42.

The bank points out in its brief that:

> "The letter does not set forth the name of the Bank that the writer represents; does not set forth the amount of the title insurance that would be acceptable; does not state when the Plaintiffs-Appellants or the Defendant-Appellee are to perform; and does not give a complete description of the property concerned, other than to state the Lot number, and the name of the Addition, but the description is not located with reference to the City, County, Township, Section, or State in which it is located; and does not discuss possession, and transfer thereof."

None of these is sufficient reason to infer that the letter was not an offer. Although the letter does not set forth the name of the bank the author represents, it does state the name of the bank's agent. No question has been raised concerning Doughty's authority and, considering the ongoing relationship of the parties, the identity of the agent and other references (to the mortgage, to Arvid Johnson by name and to the case number) in the letter are sufficient to identify the bank referred to in the letter.

■■ ■ Generally, the terms of a contract are considered reasonably certain if there is a basis for determining breach of contract. (Restatement (Second) of Contracts § 32(2) (Tent. Draft 1973).) Minor items may be left to the option of one of the parties or may be determined by what is customary or reasonable. (Restatement (Second) of Contracts § 32, comment *f*, at 78 (Tent. Draft 1973).) It is customary and reasonable that if transfer of possession is not determined, possession will be transferred when title is transferred. Likewise, although the amount of title insurance

is not specified, it is reasonable and customary that the policy be issued in an amount at least equal to the amount due and owing on the mortgage. In the case at bar, the policy was issued in the next even thousand dollar amount greater than that due and owing on the mortgage. Since part performance of an agreement may remove uncertainty and establish an enforceable contract (Restatement (Second) of Contracts § 33(2), and comment *c*, at 81 (Tent. Draft 1973)), the action of the plaintiffs in providing a commitment for title insurance in the amount of $22,000 provided certainty to the contract. The plaintiffs' action is especially conclusive here because they were invited to provide such a commitment as a means of acceptance. Where a time for performance is not specified, the law implies that the parties intended the contract to be performed within a reasonable time. *Pel-Aire Builders, Inc. v. Jimenez* (1st Dist. 1975), 30 Ill. App. 3d 270, 332 N.E.2d 519.

■■ It is also not fatal to this contract that the complete legal description of the land is not contained in the letter. The description contained in the letter, combined with the reference to the Yoders' mortgage and the judgment against the Yoders, is sufficient to inform any court in which enforcement is sought precisely to what land the contract pertains. For these reasons, this court finds that the letter is an offer, not merely a step in an ongoing process of negotiation; that the acceptance by the plaintiffs created a contract, and that this contract is sufficiently certain to be specifically enforced.

■■ ■ The last argument against specific performance is that the plaintiffs are not ready, willing and able to perform their part of the contract because they have not tendered, and will not be able to tender, clear title to the bank. We disagree. The land has already been conveyed to the defendant as a condition to the issuance of the commitment for title insurance. Although the defendant argues that the recording of a deed does not raise a conclusive presumption of delivery, this court, in equity and good conscience, must acknowledge the fact that the plaintiffs can not merely withdraw the deed from the recorder's office and thereby nullify the conveyance. Furthermore, most of the encumbrances on the title are the type that would be set off and removed at the closing of an ordinary real estate transaction. The trial court should have taken cognizance of this fact and found that the existence of tax liens was no bar to specific performance. Obviously, the existence of a mortgage and a judgment in favor of the bank could be no bar to specific performance since the release of those encumbrances was the consideration for the conveyance of the land. They too would be released at "closing." The only encumbrance which might prevent the plaintiffs from conveying clear title was Deutsch's mortgage. However, Deutsch advised the court that he was willing to release this mortgage and that he claimed no

interest in this particular lot. As an officer of the court, Deutsch can not now refuse to release his mortgage to the lot in question. In any event, the bank would have been fully protected by the title policy since the title company had failed to point out Deutsch's mortgage in the commitment.

■■ The fact that a vendor's title is encumbered will not prevent enforcement of a contract in equity if the title may be perfected by the time conveyance is consummated. (*Anderson v. Bills* (1929), 335 Ill. 524, 167 N.E. 864.) Since the plaintiffs in this case could present the bank with a clear title, the trial court should have granted specific performance to the plaintiffs.

Accordingly, the judgment of the Circuit Court of Rock Island County in Case Number 75 CH 1 is reversed, as is the judgment of the same court in the consolidated foreclosure action, Case Number 75 CH 49, and the cause is remanded to the Circuit Court of Rock Island County to proceed in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

ALLOY and STOUDER, J., concur.