The HERALD TELEPHONE, Appellant (Defendant Below),

v.

Naomi FATOUROS, Appellee (Plaintiff Below).

No. 4-681A15.

Court of Appeals of Indiana, Fourth District.

Feb. 18, 1982.

Barbara B. Benson, Douglas R. Bridges, Bloomington, for appellant.

Naomi Fatouros, appellee pro se.

YOUNG, Judge.

Defendant-appellant *The Herald-Telephone* appeals from the trial court's issuance of an Emergency Restraining Order requiring it to print the political advertisement of plaintiff-appellee Naomi Fatouros.

We affirm.

*The Herald-Telephone* is a newspaper of general circulation in Monroe County. At the time of the events which led to this appeal, Ms. Fatouros was a candidate for election to the school board in Monroe County. On Thursday, October 30, 1980, Ms. Fatouros talked with Ivan Drummond from the advertising lay-out section of the newspaper about placing an ad in the paper on Monday, November 3. Drummond informed her that the deadline for placing a Monday ad was 5:00 p. m. that day. Shortly before 5:00 p. m., Ms. Fatouros went to see William Schrader, the newspaper's editor, and told him she needed more time to finish the copy for her ad. Schrader gave her an extension of time until 8:00 a. m. Friday. Payment for the ad was accepted from Ms. Fatouros at this time.

At approximately 8:00 a. m. on Friday, Ms. Fatouros delivered her ad to Drummond. They spent the next hour or so going over the lay-out of the ad. The evidence is in conflict as to whether Drummond actually reviewed the content of the ad with Ms. Fatouros. Drummond told her that she could come back on Saturday to look at the proof of her ad. After Ms. Fatouros left on Friday, Drummond read the ad more closely. Thinking that it was "bad copy", Drummond took the ad to Marvin Lewis, the advertising director. Lewis and James Snodgrass, the vice-president for advertising, met with Ms. Fatouros around noon on Friday. They told her that the ad was inflammatory and contained derogatory statements and would not be printed. Lewis then showed Ms. Fatouros a copy of the newspaper's "Policy Considerations Covering Political Advertisements" which stated that it was against the newspaper's policy to publish inflammatory and derogatory political ads. Snodgrass offered to print those parts of the ad which were not inflammatory and derogatory or to give Ms. Fatouros her money back if she did not want to run the ad as modified. Ms. Fatouros accepted neither of these offers.

Ms. Fatouros filed a complaint and petitioned the court for an immediate order to force the newspaper to run the ad. After an emergency hearing, the court ruled that Ms. Fatouros and *The Herald-Telephone* had entered into a contract for publication of the advertisement [1] and that the newspaper's "Policy Considerations Covering Political Advertisements" was not a part of the contract. The trial court then enjoined the newspaper from breaching the contract.

On appeal *The Herald-Telephone* raises the following issues: [2]

1. Whether the Court's ruling that a contract was entered into on Friday, October 31 was contrary to the law and to the evidence submitted because the newspaper refused the advertisement in the proper exercise of its editorial discretion and therefore no contract was formed;

2. Whether the Court's finding that the newspaper's written Policy Considerations were not a part of the contract was error as a matter of law because the exercise of editorial discretion is a part of every newspaper contract regardless of whether or not *The Herald-Telephone*'s written policy guidelines were shown to Naomi Fatouros; and

3. Whether the Court's Order and Judgment for Naomi Fatouros and against *The Herald-Telephone* was contrary to constitutional law because the First Amendment Freedom of the Press guarantee supports the newspaper's position that its refusal of the ad was a reasonable exercise of editorial discretion.

Appellee has not favored this Court with a brief to support the judgment of the trial court. Nevertheless, she is given the benefit on appeal of that view of the evidence most favorable to the trial court's judgment, and reversal will ensue only if error is demonstrated in the record and by appellant's brief. *Day v. West*, (1978) Ind. App., 373 N.E.2d 935.

Appellant first contends that the trial court's ruling that a contract was entered into on October 31, 1980 was contrary to law and the evidence. In order to have a legally binding contract there must generally be an offer, acceptance and consideration. *See, e.g., L. Simpson, Contracts* § 8 (2d ed. 1965). There is no disagreement between the parties that there was an offer and consideration. The question is whether the appellant newspaper accepted Ms. Fatouros' offer to publish the advertisement. Appellant claims that there was insufficient evidence to establish that Drummond did bind the newspaper to accept the ad and that he did not possess the authority to so bind the newspaper. When reviewing a challenge to the sufficiency of the evidence, the Court of Appeals will neither weigh the evidence nor judge the credibility of witnesses, but will look only to the evidence most favorable to the trial court's determination together with all reasonable inferences to be drawn therefrom. *E.g., Glass v. Leland Smith Insurance Agency, Inc.,* (1981) Ind.App., 414 N.E.2d 977. If the appellate court finds evidence of probative value to sustain the judgment of the trial court, that judgment will not be disturbed. *Id.*

An acceptance must be evidenced by some overt act and must be communicated to the offeror. *Young v. Bryan,* (1977) Ind.App., 368 N.E.2d 1. The acceptance may be expressed by acts which manifest the acceptance. *Id.* The evidence most favorable to the judgment shows that the ad lay-out person goes over the copy with the customer if the customer has time. The plaintiff was willing to stay until the ad lay-out person was finished. The ad lay-out man reviewed the copy and told the plain-

1. Initially, the trial judge found that the contract was entered into on October 30, 1980. In his ruling on the Motion to Correct Errors, the trial judge modified his finding and ruled that the contract was entered into on October 31, 1980.

2. The issues raised by *The Herald-Telephone* dealt only with the binding nature of the contract. The appropriateness of specific performance as the remedy granted by the trial court was not challenged by *The Herald-Telephone*. Our opinion should not be read as either approving or disapproving the use of specific performance as a remedy.

tiff she could see the proof the next day. The plaintiff was never shown the newspaper's written policy on advertisement content. There was an acceptance when the appellant had an opportunity in the normal course of business, during the laying out of the ad, to reject the copy and failed to do so, and further failed to reserve any right to future review. The trial court could have found that acceptance was complete when the plaintiff left the newspaper's offices after working on the lay-out. The appellant contends that this judgment "does not take into consideration the practical realities of the newspaper business." *The Herald-Telephone*'s practical problems in this case could have been alleviated by one of two approaches: (1) reserving the right to further review of the advertisement; or (2) giving Ms. Fatouros a copy of the newspaper's "Policy Considerations Concerning Political Advertisements" and conditioning acceptance of the advertisement upon compliance with the policy considerations.

▮ *The Herald-Telephone* next contends that Drummond had no authority to accept the contract and bind the newspaper. It is immaterial whether he had actual authority; if he had apparent authority he could bind the newspaper. *Yellow Manufacturing Acceptance Corp. v. Voss*, (1973) 158 Ind.App. 478, 303 N.E.2d 281. Apparent authority is that authority which a third person reasonably believes the agent to possess because of some manifestation from his principal. *Burger Man, Inc. v. Jordan Paper Products, Inc.*, (1976) 170 Ind.App. 295, 352 N.E.2d 821. These manifestations need not be in the form of direct communications, "but rather the placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority." *Id.* at 312, 352 N.E.2d at 832. There was sufficient evidence for the trial court to conclude that Drummond had the apparent authority to bind the newspaper. The evidence most favorable to the judgment shows that Drummond usually reviewed ads with customers and did review Ms. Fatou-

ros' ad. He told her that she could see the proof the next day. Further, it was established that if copy was questionable, Drummond would show the customer the newspaper's written policy. By placing Drummond in a position to perform these acts and to make the representation to Ms. Fatouros, *The Herald-Telephone* has created apparent authority in Drummond. He therefore did have the authority to bind the newspaper.

▮ Appellant next claims that the trial court erred in determining that the newspaper's written guidelines were not part of the contract. More specifically, *The Herald-Telephone* contends that the exercise of editorial discretion is a part of every newspaper contract regardless of whether the policy guidelines are shown to a customer. We agree that a newspaper is a private business which can do business with whomever it wishes and refuse to do business with whomever it wishes. *E.g., PMP Associates, Inc. v. Globe Newspaper Co.*, (1975) 366 Mass. 593, 321 N.E.2d 915. *See* Annot., 18 A.L.R.3d 1286 (1968). While a newspaper has a right to reject any ad it wishes, this right exists only until a contract is formed. *See Humphryes Manufacturing Co. v. David Williams Co.*, (S.Ct.1911) 70 Misc. 354, 128 N.Y.S. 680. Once the contract is entered into, the newspaper stands in the same position as any other business entity and may reject an ad only if it reserved the right to do so or has an equitable defense to specific performance. *See Bloss v. Federated Publications, Inc.*, (1966) 5 Mich.App. 74, 145 N.W.2d 800, *aff'd*, 380 Mich. 485, 157 N.W.2d 241. We agree with the trial court that *The Herald-Telephone* did not establish any equitable defense or reserve any rights. Furthermore, it did not make known its policy to Ms. Fatouros and therefore the policy could not possibly be part of the contract. The policy is not a valid basis, under the circumstances of this case, for rejecting the advertisement. *The Herald-Telephone* made a contract with Ms. Fatouros and must be bound thereby.

▮ The appellant finally contends that the trial court's decision violated its first

amendment guarantee of freedom of the press. Again, we agree with the appellant that a newspaper has a right to publish or reject advertising as its judgment dictates. However, once a newspaper forms a contract to publish an advertisement, it has given up the right not to publish the ad unless that right is specifically reserved or an equitable defense to publication exists. *The Herald-Telephone*'s first amendment right is not being infringed. It may still choose to publish or not publish any material it wishes, as long as the decision is made before a binding contract is formed. The trial court's decision is not constitutionally infirm.

Affirmed.

MILLER, P. J., and CONOVER, J., concur.