INDIANA CONSTRUCTION
CORP., Plaintiff,

v.

CHICAGO TRIBUNE
COMPANY, Defendant.

Civ. No. F 85–248.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 2, 1986.

**1420**

Jon Bomberger, Baker, Daniels & Shoaff, Fort Wayne, Ind., for plaintiff.

William F. McNagny, James P. Fenton and Bert J. Dahm, Barrett & McNagny, Fort Wayne, Ind., and Lynn R. Jordan, Tribune Co., Chicago, Ill., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant Chicago Tribune Company's (Tribune's) motion for summary judgment. Plaintiff Indiana Construction Corporation (Indiana Construction) brought this action under negligence and implied contract theories. Both parties have thoroughly briefed their respective positions. For the following reasons, the Tribune's motion is granted.

## SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union,* 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1984). *See generally* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.,* 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood,* 426 U.S. 341, 348 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976).

## FACTUAL BACKGROUND

Viewed in Indiana Construction's favor, the facts are as follows. Indiana Construc-

tion is a general contracting corporation located in Fort Wayne, Indiana. The Tribune is located in Chicago, Illinois, and publishes a general circulation newspaper known as the *Chicago Tribune* (newspaper).

Some time prior to May, 1984, the City of Plano, Illinois (Plano) sought bids for a wastewater sewage treatment plant. To qualify for federal funding, Plano required prospective bidders to submit proof of a published legal notice announcing subcontracting opportunities for all "Qualified small, minority and women's businesses." Plano required that the legal notices be published fifteen days prior to the bid opening, scheduled for May 30, 1984.

On May 8, 1984, Indiana Construction sent the Tribune a letter by certified mail with return receipt requested. The letter set out a legal notice which was to be placed in the paper's classified advertising section "as soon as possible" for three consecutive days. The letter also required that the legal notice be published at Indiana Construction's expense.

The advertisement was mailed to a United States post office box number provided by the newspaper and known as the "Lockbox." On May 11, 1984, the return receipt was signed by one of the Tribune's mailroom clerks, Robert J. Urycki. Urycki's duties included picking up mail, signing receipts for certified mail, and returning the mail (by truck) to Tribune's mailroom.

The legal notice was never published. No one knows what happened to the envelope containing the letter after the return receipt was signed by Urycki. Indiana Construction never contacted the Tribune to see if its legal notice had been published. Indiana Construction never contacted the Tribune to see why the requested certified copies of the ad had never been sent. On one prior occasion Indiana Construction had a similar legal notice published after following the same procedure.

On May 30, 1984, Plano opened the bids; Indiana Construction's bid of $3,451,500 was the lowest. Indiana Construction's bid was disqualified by Plano because the legal notice had not been published. Upon rebid, Indiana Construction's bid was not the lowest and it was not awarded the contract. It now seeks $250,000 for lost profits.

## PLAINTIFF'S CLAIMS

### I.

#### *Negligence*

Indiana Construction claims that the Tribune was negligent because it failed to publish the legal notice or because it did not notify Indiana Construction of its decision not to publish the legal notice. This assumes that the Tribune had a duty; in essence, a duty not to lose the envelope containing the legal notice.

Absent some duty, negligence cannot exist. *State v. Flanigan*, 489 N.E.2d 1216, 1217 (Ind.App.1986); *Alm v. Van Nostrand Reinhold Co., Inc.*, 134 Ill.App.3d 716, 89 Ill.Dec. 520, 522, 480 N.E.2d 1263, 1265 (1985).[1] While summary judgment is rarely appropriate in negligence actions, *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1316 (7th Cir.1983); *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 768 (Ind.App. 1986), it is appropriate if no duty exists. Whether a duty exists is a question of law for the court to decide. *Flanigan*, 489 N.E.2d at 1217; *Wimmer v. Koenigseder*, 108 Ill.2d 435, 92 Ill.Dec. 233, 236, 484 N.E.2d 1088, 1091 (1985). The court will thus turn to the question of whether the Tribune has any duty.

■ Whether newspapers have a duty "not to lose" an advertisement, or more particularly a legal notice, is apparently an undecided question. The court holds that a private newspaper does not have a duty "not to lose" an advertisement. A newspaper like the Tribune cannot be held liable in negligence because it loses an advertisement, the loss of which causes pecuniary

---

1. The court has avoided the conflicts of law question: does Illinois or Indiana law govern this case? The parties declined to brief that issue since Illinois and Indiana law are in agreement on those points of law where any authority can be found.

harm. That the law does not recognize such a duty can be seen by examining cases which define the parameters of a private newspaper's duties.[2]

Newspapers have been held negligent for advertising mistakes. *Meridian Star v. Kay,* 207 Miss. 78, 41 So.2d 30 (1949). *See also* Annotation, *Mistake in Advertisement,* 10 A.L.R.2d 686 (1950). *But see Kings Creations L.T.D. v. Conde Nast Publications, Inc.,* 34 A.D.2d 935, 311 N.Y. S.2d 757 (1970) (mistake in advertising does not establish cause of action in negligence). In *Meridian Star,* as in all the "mistake" cases, the advertiser had run an ad containing a mistake. The Tribune had not run Indiana Construction's notice. There was no mistake in advertising. Mistake cases are distinguishable in that the advertiser has undertaken some responsibility in printing the ad and can reasonably be expected to print what is supplied.[3] Mistake cases do not suggest that a newspaper has any exposure to negligence liability for simply losing an ad.

Newspapers may also be held liable when an advertisement is libelous, *Pettengill v. Booth Newspapers, Inc.,* 88 Mich. App. 587, 278 N.W.2d 682 (1979), or when it invades a person's privacy rights. *Barr v. Southern Bell Tel. & Tel. Co.,* 13 N.C.App. 388, 185 S.E.2d 714 (1972). *See also* 58 Am.Jur.2d, *Newspapers, Periodicals, Etc.,* § 22 (1971). These cases rely on the peculiar principles of libel law and privacy rights. Like the "mistake" cases, these cases do not suggest that a private newspaper may have a duty not to lose an advertisement.

It has universally been held that private newspapers may reject an advertisement, even where the advertisement is proper and the fee has been paid. *See* Annotation, *Advertisement—Publisher's Refusal,* 18 A.L.R.3d 1286, 1287 (1968), and cases cited therein. In the absence of a contractual obligation a newspaper may refuse to print an advertisement, even if the refusal is the result of mere caprice, prejudice, or malice. *Poughkeepsie Buying Service v. Poughkeepsie Newspapers,* 205 Misc. 982, 131 N.Y.S.2d 515 (1954). This rule is based in part on a newspaper's first amendment right to choose what it does and does not print. *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). This rule is applicable to legal notices. *Lake County v. Lake County Publishing and Printing Co.,* 280 Ill. 243, 117 N.E. 452 (1917).

This line of cases makes it clear that a private newspaper may reject an ad which it does not want to print.[4] While rejection implies a conscious refusal, the cases even extend to capricious "rejection," *Poughkeepsie, supra,* thereby reducing the role of reason. The extent of the right to reject suggests that a newspaper which loses an ad cannot be held to have breached any duty.

But there is a more fundamental reason for holding that the law does not recognize a duty "not to lose." A duty "not to lose" would be of no avail. That is because a private newspaper, even after it receives an ad, has no obligation to print it. It is true that the Tribune prints most of the ads it receives even though it has no duty to print any ad. But the fact that the Tribune

---

**2.** It is well established that private newspapers have contractual duties. *See Tribune Co. v. Bradshaw,* 20 Ill.App. 17 (1886) and *Glass v. Garber,* 55 Ind. 336 (1876). Contract or implied contract cases lend no help in the negligence arena and are not relied on by analogy. It may be that the reason for the paucity of authority on the duty issue results from the existence of the contractual theory of recovery. *See* part II ("Implied Contract") of this opinion.

**3.** Of course, an advertiser can reject any ad it wants. 58 Am.Jur.2d, *Newspapers, Periodicals, Etc.,* § 21 (1971). Beyond that, even where a

newspaper has printed an ad a contractual obligation arises, obviating the need for a cause of action in negligence. *See, e.g., Kings,* 34 A.D.2d at 935, 311 N.Y.S.2d at 757.

**4.** This right is not absolute. A newspaper with a dominant position cannot attempt to establish a monopoly by refusing to accept advertisements from those who advertise with a competitor. *Kansas City Star Co. v. United States,* 240 F.2d 643 (8th Cir.1957), *cert. denied,* 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438.

prints most of the ads it receives does not suggest a duty.[5] The Tribune has no legal duty to print what it does not want to print.

■ Indiana Construction has suffered a hardship. But imposing a duty on the Tribune to relieve that hardship is not justifiable and would have enormous ramifications. Not every hardship is actionable. *Bridgewater v. Economy Engineering Co.*, 486 N.E.2d 484 (Ind.1985) (to be liable for negligence defendant must have failed to exercise duty of care). Normally, the loss of an advertisement will result in less business for a newspaper and the inconvenience of re-running an ad for the one whose ad was lost. In rare cases like this one, where the consequences are greater, the law puts the burden upon the one placing the ad to inspect the first insertion for correctness.[6]

In essence, Indiana Construction is alleging that the Tribune negligently interfered with its prospective contractual relationship with Plano by losing its legal notice. This kind of negligent interference is not actionable. The Restatement (Second) of Torts § 766C(c) (1977) provides:

> One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently ...
>
> (a) interfering with the other's acquiring a contractual relationship with a third person.

Comment a, illustration 4, is particularly relevant.

> A contracts with a telephone company for the insertion of A's business advertisement in its telephone directory. Through the negligence of B, who prints the directory for the company, the advertisement is omitted and as a result A

suffers pecuniary loss. B is not liable to A for tortiously interfering with contractual relations.

The Restatement buttresses the court's holding that the Tribune cannot be held liable in negligence. Both Indiana and Illinois require intentional conduct in actions for tortious interference. *Bates & Rogers Const. v. North Shore*, 92 Ill.App.3d 90, 47 Ill.Dec. 158, 162, 414 N.E.2d 1274, 1278 (1981); *Monarch Indus. Towel v. Model Coverall Service*, 178 Ind.App. 235, 381 N.E.2d 1098, 1099 (1978). Negligence will not support the plaintiff's claim.

In summary, those cases imposing duties on newspapers do not suggest that private newspapers can be made liable in negligence for losing an ad. A newspaper's right to reject suggests that no duty exists and the balance of harms supports that view. Moreover, the Tribune could never foresee the kind of harm which Indiana Construction suffered, and thus can have no duty to prevent that harm. *Virgil Homer v. Pabst Brewing Co.*, 806 F.2d 119, 120–21 (7th Cir.1986) (under Illinois law foreseeability is a necessary requirement before imposing a duty). If the loss of an ad would have serious consequences then the one placing the ad should take advantage of every opportunity to minimize potential losses.

## II.

### Implied Contract

■ Indiana Construction argues that the Tribune breached a contract implied in fact. A contract implied in fact is one where the parties reach an agreement by their conduct.

> An implied contract, that is, one wherein an agreement is arrived at by the acts

---

**5.** Arguing that the law should impose a duty "not to lose" is somewhat like arguing that the law should impose a duty to see those in need of rescue even though the law imposes no duty to rescue. While seeing those in need of rescue might result in more rescues, those rescues would not be the consequence of any legal duty.

**6.** The court notes that if this case went to trial on the negligence claim (assuming some duty)

there would be a serious question as to Indiana Construction's own conduct in placing the ad. Plano required each ad to be published for three consecutive days at least fifteen days prior to the bid opening on May 30, 1984. On May 8, 1984, the letter was mailed; it was received on May 11, 1985. The Tribune was given no lag time. Indiana Construction may have been disqualified even if the ad was run.

and conduct of the parties, is equally as binding as an express contract, wherein the agreement is arrived at by their words, spoken or written. In either case it grows out of the intention of the parties to the transaction. If there has been a meeting of minds and the clear intent of the parties to the transaction is evidenced by their acts and conduct viewed in the light of the surrounding circumstances, then the resultant implied contract differs from an express contract only in the mode of proof. (Citations omitted).

*Dyer Construction Co., Inc. v. Ellas Const. Co., Inc.,* 153 Ind.App. 304, 287 N.E.2d 262, 264 (1972), quoting *Retter v. Retter,* 110 Ind.App. 659, 40 N.E.2d 385 (1942). *Cf. Borg-Warner Corp. v. Anchor Couple Co., Inc.,* 16 Ill.2d 234, 156 N.E.2d 513 (1959). Contracts implied in fact require the same elements (i.e. offer, acceptance, consideration) as express contracts, except that the agreement is arrived at by the conduct of the parties. Thus, the court must examine the undisputed facts "in light of the surrounding circumstances" to determine whether the parties intended to contract.

While Indiana Construction argues that it was "accepting" the Tribune's offer when it sent in its legal notice, the sending of the notice was itself the offer. *Chicago Joint Bd., Amal. Cloth Wkrs. v. Chicago Tribune Co.,* 307 F.Supp. 422, 424 (N.D.Ill. 1969); *Herald Telephone v. Fatouros,* 431 N.E.2d 171, 174 (Ind.App.1982). Before a contract could be formed, the Tribune then had to accept the offer.

Acceptance must be "evidenced by some overt acts and must be communicated to the offeror." *Fatouros,* 431 N.E.2d at 174. *Cf. Yoder v. Rock Island Bank,* 47 Ill. App.3d 486, 5 Ill.Dec. 755, 362 N.E.2d 68 (1977). Acceptance must correspond in every respect to the terms of the offer. *Ra-*

*dio Picture Show v. Exclusive Intern Pic.,* 482 N.E.2d 1159, 1166 (Ind.App.1985). The undisputed facts indicate that mailroom clerk Urycki signed the return receipt and that on one prior occasion the Tribune published a legal notice and sent Indiana Construction a bill and a billing number.

These facts do not amount to acceptance. The Tribune's one prior dealing with Indiana Construction does not indicate acceptance of all subsequent offers. When Urycki signed the return receipt he was not accepting the offer on behalf of the Tribune. He did not have knowledge of the terms of the offer. His duties (picking up mail, signing receipts, returning mail) do not give him the authority to accept offers. The Tribune did nothing to evidence its acceptance and did not communicate acceptance to Indiana Construction in any way.

Plaintiff relies on *Herald Telephone v. Fatouros, supra,* where the court held that an ad layout man, who had reviewed an ad with a customer, had apparent authority to accept an offer and bind the newspaper. *Fatouros,* 431 N.E.2d at 175. *See also Goldberg v. New York Times,* 5 Med.L. Rptr. 1409 (N.Y.App.Div.1979) (acceptance where adtaker read ad back to plaintiff and confirmed dates). *Fatouros* is distinguishable. In *Fatouros,* the ad layout man had received the ad, reviewed it, and communicated with the plaintiff. *Fatouros,* 431 N.E.2d at 175. The man had performed acts making it reasonable for the plaintiff to believe that he possessed authority to accept her ad, giving him apparent authority. Here, Urycki merely signed the return receipt. He did not communicate with the plaintiff and the plaintiff had no reason to believe that he possessed authority.[7]

Indiana Construction also argues that Urycki's failure to reject the envelope amounts to acceptance. In *Fatouros,* the

---

7. It could be argued that Indiana Construction believed that Urycki had authority to accept the ad when Indiana Construction received the return receipt on May 14, 1984. Indeed, Indiana Construction received notice of the Tribune's receipt. But notice is not acceptance and does

not make a contract. Thus, even if Indiana Construction reasonably thought that Urycki had authority, that authority would only be authority to acknowledge receipt, not to accept an offer.

court held that the ad layout man could have rejected the ad, and that he had accepted it by failing to reject it "during the layout of the ad." *Id.* at 175. When Urycki signed the return receipt he had nothing to reject but the envelope; he did not even know what was contained in the envelope. His failure to reject does not amount to acceptance.

The court notes that the newspaper contained a clause "limiting liability," which, assuming the existence of a contract, would preclude Indiana Construction from recovering lost profits. Such clauses have been upheld.[8] *General Bargain Center v. American Alarm Co., Inc.,* 430 N.E.2d 407, 410–11 (Ind.App.1982); *First Financial Insurance Co. v. Purolator Security, Inc.,* 69 Ill.App.3d 413, 26 Ill.Dec. 393, 388 N.E.2d 17 (1979). Contracts which contain such clauses are enforceable so long as they are willingly and knowingly made, are free from fraud, are not contrary to public policy, are not unconscionable, and are not the result of unequal bargaining power. *American Alarm,* 430 N.E.2d at 412. *See also Weaver v. American Oil Co.,* 257 Ind. 458, 276 N.E.2d 144 (1971).

The clause states, "The newspaper will not be liable for a failure to publish an ad … except to the extent of the cost of the ad for the first day's insertion." Assuming a contract exists, it would be free from fraud, not contrary to public policy, and not unconscionable. The only real question is whether the clause would be a part of the contract. If a contract exists, it exists only because the newspaper contained language soliciting offers. In other words, the terms and conditions come from the newspaper; accordingly, the language limiting the Tribune's liability would be a part of any contract. Therefore, the Tribune would only be liable for the cost of the first insertion and would have no liability where the claim is for lost profits, as asserted here.

**CONCLUSION**

The Tribune is entitled to summary judgment. It cannot be held liable in negligence for losing Indiana Construction's ad. No contract was formed because Indiana Construction's offer was not accepted. Accordingly, summary judgment is ORDERED in favor of the Tribune.

---

8. *Cf. Southern Bell Telephone & Telegraph Co. v. Coastal Transmission Service, Inc.,* 167 Ga.App. 611, 307 S.E.2d 83, 86 (1983) (limitation of liability clause upheld in action against a publisher of yellow pages). *See also* Annotation, *Telephone Directory—Mistake—Omission,* 92 A.L. R.2d 917, § 2 at 921, § 3 at 945 (1963).