GILBERT *v.* CROSBY *et al.*

(Division A. June 9, 1931. Suggestion of Error Overruled August 13, 1931.)

[135 So. 201. No. 29415.]

Stone & Stone, of Coffeeville, for appellant.

M. V. B. Miller, of Meridian, A. G. Busby, of Waynes-
boro, and Rawls & Hathorn, of Columbia, for appellees.

**Cook, J.,** delivered the opinion of the court.

During the months of April and May, 1929, the work of Texas fever tick eradication was in progress in Wayne county, Miss., the work being carried on under the direction and supervision of the state live stock sanitary board, in co-operation with the board of supervisors and other executive officers of that county, under the provision of chapter 265, Laws 1926, and chapter 264, Laws 1926, as amended by chapter 61, Laws 1928. After repeated notices to the appellant, C. O. Gilbert, to bring his mules to a dipping vat near his home to have them inspected for the purpose of dipping·them, if they were found to be infected with ticks, he refused to comply with these notices, and thereupon W. J. Wilkins, a duly authorized inspector of the live stock sanitary board, filed with the circuit clerk of the county an affidavit, which does not appear in the record, but upon which the said clerk issued a warrant in the following words and figures:

"Writ of Seizure

"To any Lawful Officer of Wayne County:

"We command you immediately, to take into your possession and forthwith deliver to W. J. Wilkins, a duly

commissioned live stock inspector of the State Live Stock Sanitary Board, to be dealt with by said inspector according to law, the following described live stock to-wit:

"Two red horse mules, valued at seventy-five dollars each, two black mare mules at seventy-five dollars each and one black horse mule valued at seventy-five dollars and two red or bay mare mules valued at seventy-five dollars each and one dapple grey horse mule valued at seventy-five dollars, a total value of all stock undipped six hundred dollars, now in charge of C. O. Gilbert upon his premises, more particularly described as follows: His farm one mile southeast of Winchester, Wayne county, Mississippi, and summons the said C. O. Gilbert to appear before the July term of the circuit court of Wayne county, Mississippi, at Waynesboro in said county at the next term of said court to be held at nine o'clock on the 1st Monday of July, 1929, to answer this writ, and have then and there this writ.

"G. L. Norsworthy, Circuit Clerk."

This writ was placed in the hands of the sheriff, who thereupon, through his deputy, took the mules described therein from the appellant's fields where they were engaged in ploughing, and delivered them to the inspectors and range riders of the live stock sanitary board. They were then carried to the vat and inspected, and, upon being found to be free of ticks, they were carried to the county site and delivered to the sheriff. Thereafter the sheriff dealt with the mules in strict accordance with the provisions of section 10 of chapter 265, Laws of 1926, and, after due advertisement, sold the five mules at public auction for the sum of five hundred sixty-two dollars and fifty cents, and thereafter tendered this sum, less the accrued costs and expenses, to the appellant, who refused to accept it.

Thereafter the appellant instituted this suit against the sheriff, A. L. Crosby, and his surety, the United Fidelity & Guaranty Company, seeking to recover as dam-

ages alleged to have been sustained as a result of the wrongful seizure and sale of the mules the market value thereof and the losses on crops, fertilizer, rent, and labor, amounting in the aggregate to five thousand six hundred ninety dollars. Upon the evidence offered at the trial, and under the instructions granted to the respective parties, the jury returned a verdict for the appellant for the sum of nine hundred dollars; and from this verdict and the judgment entered in pursuance thereof this appeal was prosecuted, the contention of the appellant being that the damages allowed are wholly inadequate, and the assignments of error being based upon matters which, it is alleged, contributed to or caused the inadequacy of the verdict.

The appellee prosecuted a cross-appeal, assigning as error, among other things, the action of the court in peremptorily instructing the jury to find for the appellant, his contention being that, in entering the appellant's premises and seizing his mules, the sheriff acted under a writ that was regular and valid on its face and committed no trespass in so doing, and that, after the mules were seized, the sheriff dealt with them in the manner prescribed and required by chapter 265, Laws of 1926; and, consequently, his only liability to the appellant was the amount realized from the sale of the mules, which was tendered into court.

The writ under which the sheriff acted in entering the premises of the appellant and seizing the mules does not on its face comply with the requirements of a writ of replevin, and we do not understand counsel for the appellee to contend that it is a writ of replevin, but that it is a mere writ of seizure commanding the sheriff to seize the mules and deliver them to a state live stock inspector to be dealt with by such inspector according to law. Neither chapter 264 nor chapter 265, Laws of 1926, makes any provision for the issuance of a writ authorizing the entry into the premises or inclosure, and

the seizure of the stock, of a person who fails and refuses to dip such stock; and we have found no statutory authority elsewhere for the issuance of such a writ.

Section 3, chapter 264, Laws 1926, which sets forth the powers of the live stock sanitary board, and confers upon said board the power to delegate authority to its "inspectors and range riders to enter premises to inspect and disinfect live stock and premises, and enforce quarantine including counties, farms, pens, stables and other premises," was amended by the Code of 1930, section 5414, by adding the proviso that officers and agents of said board may enter the actual inclosure of any person for the purpose of disinfecting live stock and premises, and enforcing quarantine, "(1) with the consent of the person lawfully in possession thereof or (2) in the absence of such consent, with a proper writ obtained as in other cases of searches and seizures under constitutional law." Prior to the enactment of the Code of 1930, the statutory law contained no reference to the issuance of such a writ; and we are of the opinion that the writ here involved is therefore void, and does not relieve appellee of liability as for a civil trespass. In view of the conclusion being reached on the direct appeal, the other cross-assignments of error are immaterial.

On the direct appeal we are of the opinion that the judgment of the court below should be affirmed. The appellant was entitled to recover the market value of the mules, and upon this point the evidence was sharply conflicting, but will support a verdict for nine hundred dollars, as being the market value of the mules. Upon the other elements of damages claimed, the appellant recognized the rule to be that it was his duty to exercise reasonable efforts to avoid or reduce the damages resulting from the wrongful act of the sheriff, and, in an effort to show that he exercised all reasonable diligence and effort in that regard, he offered evidence to show

the inquiries and efforts made by him to locate and secure, by purchase or otherwise, other mules to prepare his land, and cultivate the crops which he proposed to plant during the year 1929; and he testified that, after the most diligent inquiry and effort, he was unable to secure mules to take the place of those taken from his possession.

The sheriff offered testimony to the effect that he offered to surrender the mules to the appellant after they were inspected, and dipped if found to be infected, without bond, and that within a couple of days after they were seized he offered again to surrender them upon payment of the clerk's fee of one dollar and twenty-five cents, and that this offer was refused. The appellant denies that there was any offer to return the mules to him upon the payment of the clerk's fee of one dollar and twenty-five cents, but he admits that, at the time they were taken from his possession, the deputy sheriff who executed the writ offered to surrender the mules to him at Waynesboro, the county site, without bond, his testimony upon this point being as follows: "When I told him that I wanted to make bond for those mules I insisted the last time, when he was fixing to lead my mules away, he told me, he said 'if you will come and go with us to Waynesboro you can bring them back without bond,' and I told him, I said, 'Sam, if you take those mules away from me you take them without authority of law, and if they ever come back here you will be the man to bring them back for I am not going after them.' "

During the cross-examination, in detailing what was said at the time the mules were carried away from his premises, the appellant further testified as follows:

"Q. Is that all that was said now about keeping the mules or getting possession of the mules? A. No; just like I told you awhile ago, he told me that if I would come with them up there and then pay him for taking

the mules up there, you can bring the mules back without bond.

"Q. What did you say about that? A. I said, 'Mr. Cochran, if you lead them away from here you lead them away without authority of law. I have offered you bond for them; I have a right to make bond, and if you lead them away you will lead them back.' "

While the appellant testified that he exercised the most diligent efforts to secure other mules, and was unable to secure them anywhere within the vicinity of his residence, it appears that he persistently refused an opportunity to have the mules returned to him at Waynesboro, about six miles from his residence, upon the payment of less than ten dollars, according to his testimony, and one dollar and twenty-five cents according to witnesses for the appellee, the reason assigned by him for such refusal being that they had been taken without authority, and if they came back the sheriff would have to bring them. It was further admitted by the appellant that he had full notice and knowledge of the time and place of the sale of the mules by the sheriff, and that he failed or refused to attend this sale and to offer to purchase the mules, knowing at that time that, if they had been wrongfully seized and sold, the sheriff and his bondsmen were liable to him for the sale price thereof, expense, and other damages resulting directly from the unlawful act. Having refused to repossess at nominal expense, or at an expense against which he was fully protected, the identical mules with which he proposed to prepare his lands and cultivate his crops when the opportunity was readily available, the appellant cannot now recover damages for the loss of crops which were never planted, and other expenses, all of which could have been avoided by the utilization of available opportunities to return his mules to the plow. A reasonable effort to avoid or reduce the damages resulting from the invasion of his rights required the acceptance of the

means available for that purpose, and, having refused to do so, and having permitted his land to lie idle, he cannot now recover supposed profits on crops that were never planted.

The judgment of the court below will therefore be affirmed on direct and cross appeal.

Affirmed.