MERIDIAN STAR v. KAY, et al.

In Banc. June 13, and July 14, 1949.

No. 37133. (41 So. (2d) 30, 41 So. (2d) 746)

**Broach & Ethridge,** for appellant.

**Snow & Covington,** for appellees.

**Alexander, J.**

This action was brought by the mercantile firm, Kay's, seeking damages for the alleged negligence of the appellant newspaper in allowing a price error to be published in an advertisement. From a verdict and judgment for the plaintiff in the sum of $4,000, the newspaper appeals.

On December 5, 1946, Kay's ran an advertisement in the paper, of the tenor following "Kay's Pre-Xmas Clearance of Coats, Suits, Dresses. 25% off. Fur coats included. Your opportunity for Real Savings." It requested appellant to insert on December 15th the advertisement in substantially the same form, using a larger display space. This copy did not refer to fur coats. It contracted further for an advertisement to be run on December 26th. This copy was in the following words, omitting its typographical display: "Kay's Clearance Sale. Entire stock of Fall & Winter Coats, Suits, Dresses, ½ off. Your opportunity for Real Savings." It bore on the margin the penciled legend "12/26". This advertisement was, however, run in the paper on December 15th.

The evidence sufficiently supports the finding of error and mistake by the appellant and its liability. Our examination will therefore be confined to the matter of damages. Kay's insists that it was compelled, and moreover led by the appellant, to proceed with sales on the basis of "½ off", and this he did from December 15th until Christmas day. Its declaration alleges that its loss is measureable by the difference between a reduction basis

of one-fourth and of one-half on all merchandise sold after and pursuant to the erroneous advertisement of December 15th. It asserts that "Plaintiffs charge that as a direct and proximate cause and result of defendant's negligence and carelessness as hereinabove set forth they were damaged, etc." Although the declaration includes references to an agreement by the defendant that the sale be conducted in conformity with the advertisement, and despite the fact that the advertisement may have constituted a contract with the paper, the cause was tried as a negligence case, and both the argument and the instructions conform to this theory.

The appellee adduced testimony that it had been engaged in the business of selling ladies' apparel in the City of Meridian for fifteen years. The advertising manager was advised of the error on Monday, December 16th, and confirmed Mr. Kay's discovery. He offered, on behalf of the paper, to correct the mistake in any feasible manner. His suggestions to this end included a front page story explaining the situation, streamers, window signs and other measures availing of the publicity resources of the paper. The substance of this offer is not disputed.

After failing in an attempt to see the editor and publisher, Mr. Skewes, during Monday morning, Mr. Kay had a personal interview with the publisher that afternoon. It is without dispute that the offer to correct the error by adequate publicity was repeated at this interview. It is uncontradicted that on both occasions, Mr. Kay refused to follow this course, explaining that he feared that it would constitute an affront to his integrity and that customer reaction would be unfavorable. Although Kay carried out his purpose to stand up to the offer as advertised in spite of anticipated losses, the fact that he did so elect to proceed, and the asserted justification therefor are the crux of our review.

According to Kay's version, Mr. Skewes assented to the conclusion of the former that he could not afford to

change his prices in the face of the offer as published. He told Skewes that ''The reputation of Kay's is at stake and we have to go through with it. I will keep a record of all the transactions between the quarter-price and the half-price. I will have to discuss it with you after the 24th of the month.'' He further stated that 'He (Skewes) told me to keep my records, after I told him that I would keep the record of the difference between the quarter and the half, he emphasized to me to be sure to keep my records.''

Skewes admits the fact of the interview, and the fact of, and reasons for, Kay's decision. He denies that Kay told him it would ruin his business if he tried to change the sale prices, and also that he knew Kay was going ahead with his decision to adjust his prices to the advertisement.

Two days later, Kay's sent to appellant the following letter:

''2105 Fifth Street, Meridian, Miss.
''December 18th, 1946

''Kay's
''The Meridian Star
''Meridian, Mississippi
 ''Attention: Mr. James H. Skewes
''Gentlemen:
''On Monday afternoon I talked with your Mr. Skewes in regard to sales advertisement erroneously published in The Meridian Star on Sunday, December 15th, 1946. Mr. Skewes agreed that I could not recall the reduction of prices as stated in the advertisement and that there was nothing for me to do but proceed. It was perfectly obvious that was the only course I could take and that any other course would irreparably damage my reputation as a merchant and ruin my business. Mr. Skewes was to let me hear from him but has not done so. It was most unfortunate this error was made at this particular time, as this is the busy season of the year and people this year are buying more than in former years. They

have more money to spend. As a result of the advertisement, erroneously run, my store has been crowded all of this week and my sales are running high. In order that the damage I am suffering may be readily ascertained (following lines underscored in red) *I am keeping my sales tickets, on merchandise sold, and which falls within the terms of the advertisement, separate from tickets showing sales of merchandise which does not fall within that category.* (Underscoring ends.)

"Very truly yours,

"Kay's

"SK/arc Sydney Kay"

On the same day, the following reply was mailed:

"Dec. 18th, 1946.

"Mr. Sydney Kay,

"Kay's,

"2105 Fifth Street,

"Meridian, Miss.

"Dear Mr. Kay:

"We acknowledge yours of December 18th, in re advertising appearing in the Meridian Star December 15th, 1946.

"We note your statement that the 40-inch advertisement in question: 'Entire stock of fall and winter coats, suits and dresses' should have read '¼ off' instead of '½ off' as published. We regret the inadvertence.

"We quote from your letter that:

" 'As a result of the advertisement . . . my store has been crowded all this week and my sales are running high.'

"We note your statement that: 'I am keeping my sales tickets, on merchandise sold, and which falls within the terms of the advertisement separate from tickets showing sales of merchandise which does not fall within that category.'

"As we understand the situation: our liability—if any —is limited to the difference between '¼ off' and '½ off'

merchandise actually sold as result of the 40-inch ad in question.

"We shall look forward to your further advice with interest.

"Sincerely yours,
"The Meridian Star,
"By Jas. H. Skewes
"Editor & Publisher

"Jas. H. Skewes/LS

"This paper is made in part from Mississippi and mid-South cotton."

The admission of this correspondence is assigned as error. We find it relevant upon the issues hereinafter discussed.

Regardless of the unique situation here presented and the difficulties of fixing with reasonable certainty the amount of damages, it must be kept in mind that this is a negligence case, and as such the damages must be reasonably ascertainable not only, but also must be the proximate and reasonable result of the negligent act. In considering the issue of proximate cause, the existence of a duty upon the plaintiff to mitigate his damages by reasonably available means becomes a relevant factor. See Western Union Tel. Co. v. Anniston Cordage Co., 6 Ala. App. 351, 59 So. 757.

These general principles, however simple in statement, must be adjusted to the facts here present. Was the situation here such as to justify Kay's in electing to suffer a maximum loss, and was his decision final and controlling?

We are brought back to the background of Kay's decision to proceed with his sales. The declaration on this point alleges that the "general manager (Skewes) then agreed that the said advertisement could not be recalled as to attempt to recall the same would greatly damage plaintiff's business and the said general manager . . . advised and told plaintiff to proceed with the sale as advertised and that defendant would take care of plain-

tiff's damage . . . As per request of defendants plaintiffs kept a strict account of sales made pursuant to advertisement.''

The contention that the statements made by Skewes in the interview of December 16th were but reactions to Kay's predetermined decision to go ahead with its sale is more than merely plausible. The appellant's reply to the letter of December 18th presents greater difficulty. Appellant took note of the fact that Kay's was keeping account of all sales, with a view to holding the paper to this basis of damages. It is in point, however, that. when this letter was written, the sale had been in progress for two days. We repeat another significant part of the reply: "As we understand the situation: Our liability—if any—is limited to the difference between '¼ off' and '½ off' merchandise sold as a result of the 40-inch ad in question.'' It will be recalled that in closing the interview of December 16th, Skewes is quoted as saying "Keep your records.'' Now is this enforceable as a contract? Is it more than recognition of a course determined upon by Kay independently of appellant's views? Does it rise above mere consultation with a view to explaining a predetermined decision? Above all, what is its effect in a suit, not in contract, but in tort?

We pose these questions, not for our determination but to emphasize that their answers bear upon the reasonableness of Kay's chosen course and the existence, vel non, of a duty reasonably to mitigate his damages. The conflicting considerations which must be given play are factual and are commended to the judgment of the triers of fact.

It is interesting that in Shingleur v. Western Union Tel. Co., 72 Miss. 1030, 18 So. 425, 427, 30 L. R. A. 444, 48 Am. St. Rep. 604, this Court, confronted with a similar problem involving a price error in a telegram, asked itself the following question: "But, whether looked at in the light of contract or of tort, plaintiff's case comes inevitably to this: That plaintiff, at a time when he knew

fully of the mistake in the telegram, and when he could have delivered or refused to deliver the cotton, and when, the minds of plaintiff and of Appleton, Dixon & Co. never having met, and there being, as to this sale, no contract made between them, plaintiff was, therefore, under no legal liability to deliver the cotton, nevertheless, acting on the 'sentiment' that he would himself protect his agent (already fully protected by the liability in tort of the company to such agent), and maintain his business credit, did deliver the cotton anyhow, and, having done so, now seeks to hold the company,—can the action be maintained?" Shingleur had telegraphed an offer to sell cotton at $8\frac{1}{2}\cent$ per pound. The message to his broker was erroneously transmitted to $8\frac{5}{16}\cent$ per pound. After notice of the error, Shingleur went through with the sale at $8\frac{5}{16}\cent$. Compare his explanation with the instant case, where he stated "That is a mere business obligation, and we had to fulfill or lose our credit. It was a moral sentiment. It was to our interest to do it." This Court held: "Here, appellant had shipped no goods, had incurred no legal liability, had merely to refuse to comply with the terms of a contract he had never made, and remit Appleton, Dixon & Co. to their adequate remedy against the company. His payment was voluntary and gratuitous, and cannot on any sound or just principle, create for him a cause of action where none existed prior to such voluntary payment."

In this connection, we refer to the following instruction, whose refusal to the defendant is assigned as error: "The court instructs the jury for the defendant, The Meridian Star, that the advertisement in this case was only an invitation to the public to make offers to purchase the goods at the prices stated, and said advertisement did not constitute or effect a binding obligation on the part of the plaintiffs, trading as Kay's, to sell such goods at the sales price as stated in the advertisement; and, accordingly, if Kay's elected to go ahead and hold the sale at the prices stated in such advertisement, then

.the defendant, The Meridian Star, is not liable for damages, if any, suffered by Kay's as a result thereof.'' Other instructions of like import were refused.

We are of the opinion that the instruction reasonably submitted this issue and ought to have been given. Plaintiff's instructions for the most part assume that the total sales between December 16th and December 26th would furnish a liquidated basis for computing damages. In another instruction for the plaintiff, the fact of the appellant's offer of correction was denied any relevancy on the issue of liability or damages.

Issues of fact were raised involving an inquiry whether blouses, fur coats, and other apparel were comprised within the offer to sell ''Coats, Suits, Dresses.'' These are proper subjects for factual examination. Some recognition was given to a doubt in this respect, by an instruction for the plaintiff withdrawing certain of such items from any computation of damages. That there were other similar items shown in appellee's account, which appear not to have been so included, is not explained, but we make no findings with respect thereto. In view of our disposal of the appeal, other questions raised are pretermitted.

We summarize our views as follows: Whether the course followed by appellee was so reasonable as to constitute a foreseeable result of appellant's negligent act; whether the course followed by appellee was made reasonable by conduct and assurances of appellant; whether the election of appellee was the result of his own independent judgment; whether such judgment was exercised reasonably and without a reasonably available mitigating alternative, are factual issues whose determination by the jury ought not to have been foreclosed.

We find no error in the method pursued to establish the amount of the loss by the appellee. It is the denial to the appellant of the right to submit the issue of reasonable foreseeability and proximate cause, into which the existence of a duty to mitigate loss should be canvassed,

that challenges our attention. Nor do we decide the sufficiency of the conversations and correspondence to establish a binding contract with all its essentials, as distinguished from an expression of legal opinion or a supine resignation. Were we to build these interviews into a binding contract, and authorize its enforcement as such, we would put into eclipse appellee's elected cause in tort.

The judgment as to liability is affirmed and the cause remanded for further proceedings consonant with the views expressed.

Affirmed on liability, remanded on issue of damages alone.

SUPPLEMENTARY OPINION ON SUGGESTION OF ERROR.

### Alexander, J.

Suggestions of error have been filed by both parties to this cause. They raise points which merit discussion.

██ ██ Our primary task was to identify this cause as one sounding in tort. Resting upon this basis, it was elemental that damages must be such as resulted proximately from the negligent act and were reasonably foreseeable as probabilities. The concluding factor in the issue of quantum is the duty of the plaintiffs to take reasonably available measures to mitigate their damages. Gilbert v. Crosby, 160 Miss. 711, 135 So. 201; Mars v. Hendon, 178 Miss. 157, 171 So. 880, 173 So. 286; North American Accident Ins. Co. v. Henderson, 180 Miss. 395, 177 So. 528; Tri-State Transit Co. v. Martin, 181 Miss. 388, 179 So. 349; Yazoo & M. V. R. Co. v. Fields, 188 Miss. 725, 195 So. 489, 196 So. 503; Severini v. Sutter-Butte Canal Co., 59 Cal. App. 154, 210 P. 49; 4 Rest. Torts, Section 918.

It was in the light of the last element of damages that we searched the record for guideposts by which the jury could chart their course. The following instruction was

discovered among the assignments of error, and appeared to embody an essential ingredient of both the plaintiff's duty and the extent of the defendant's responsibility. We reproduce this instruction which was refused to the defendant:

"The court instructs the jury for the defendant, The Meridian Star, that the advertisement in this case was only an invitation to the public to make offers to purchase the goods at the prices stated, and said advertisement did not constitute or effect a binding obligation on the part of the plaintiffs, trading as Kay's, to sell such goods at the sales price as stated in the advertisement; and, accordingly, if Kay's elected to go ahead and hold the sale at the prices stated in such advertisement then the defendant, The Meridian Star, is not liable for damages, if any, suffered by Kay's as a result thereof."

Its opening clauses stated a correct principle. Its latter clause was construed by us as implying the adoption by appellees of an unwarranted and arbitrary course. In this, we seemed to have prejudged the unreasonableness of appellees' choice. In summarizing our conclusions, we sought to clarify our views by ruling out all expressions or intimations inconsistent therewith. Yet, it remains that the quoted instruction is in effect peremptory in appellant's favor, and is discordant with the controlling principles which we laid down. By making controlling the mere fact of appellees' election to proceed, without submitting the issue of the reasonableness of such course, it is out of harmony with the opinion. We, therefore, withdraw our approval of the instruction as a suitable illustration of the applicable principles, but adhere to our view that ▮▮ if the appellees proceeded with the sale at their own election, they did so at the risk that they were adopting a course which might be found to have been, under all the circumstances, unreasonable. See Horn v. Shell Pipe Line Corp., Mo. App. 52 S. W. (2d) 16.

Its peremptory character finds echo in appellees' instruction that in the event liability is found, damages could be computed upon the basis of 25% of the original selling price of all merchandise sold as a result of the erroneous advertisement. This is not a case for liquidated damages. Of course, if the jury should find that the course followed by appellees was the only one reasonably available, such basis of computation may well be applied as to all sales made pursuant to the advertisement. Appellees' instruction assumed reasonableness; appellant's instruction assumed unreasonableness. Neither is correct.

The appellees procured an instruction that: ''the fact that defendant may have offered to publish a correction notice or advertisement, or to print posters or streamers to be displayed by the plaintiffs or to give the plaintiffs a letter acknowledging that an error had been made in the advertisement published as Kay's in the Meridian Star, in its issue of December 15, 1946, is no defense as to the question of liability of the defendant to plaintiffs.''

 Despite its probable technical accuracy, it may well have confused the jury who could readily have confounded the fact of liability with the extent of liability. The offer by appellant to make such amends or corrections as they could is proper defensive material upon the issue of quantum of damages. Yazoo & M. V. R. Co. v. Fields, supra.

The continuing tendency to confuse contract and tort, which persists even in the suggestion of error, makes apposite the language of this Court in Adams v. Power, 48 Miss. 450, 468:

''The theory of the case manifested by the instructions granted and refused, either altogether precluded or so obscured this aspect of the plaintiff's title to recover, that it could not and did not receive that consideration which the testimony in support of it merited.

''On a second trial the facts can be more fully and distinctly developed, the rules of law more clearly appre-

hended and applied, and, we doubt not a result attained which will be satisfactory both on the law and the facts.''

The fact and contents of the correspondence between the parties on December 18th remains under attack by appellant. It is still vigorously argued that it was self-serving and constituted no agreement binding upon appellant. Whether they were valid as a contract, we did not decide because this is not a suit upon contract. We state again that its relevancy is merely as circumstantial data bearing upon the issue of the reasonableness of appellees' chosen course. Krauss v. Greenbarg, 3 Cir., 137 F. (2d) 569. By arguing that a substantial part of appellees' stock had been sold prior to the Skewes letter of December 18th, appellant perpetuates a contention which we sought to dispel by a finding that the action was not upon any agreement. Appellant's negligent act—so found by the jury—confronted appellees with a dilemma. Their reaction thereto, even though under some emergency, is not to be finally judged as to reasonableness by either of the parties but by the jury. It is for this reason that the letters between the parties may not establish the fact of liability but are relevant in measuring its extent. See Natchez Ins. Co. v. Stanton & Smedes & M. 340, 10 Miss. 340, 41 Am. Dec. 592.

We have in our former opinion set out the legal and factual issues. ██ █ Actionable wrong having been adjudged, liability has become fixed at least for nominal damages. The only legal principle to be applied is the duty of plaintiff reasonably to mitigate his loss. All issues of reasonableness are factual. It was not for us to define what is reasonable. Defendant's offer to forestall or alleviate damage was as relevant as plaintiffs' conduct in accepting the loss as unavoidable. These issues belong in new instructions which will inform the jury as to what factors may be taken into account in adjudging whether appellants' injury was self-inflicted in the face of a reasonable and safe alternative, or whether it was reasonably to be considered inevitable for the lack of such option.

Our references to the content of the advertisement published December 15th are assailed as incorrect. Counsel has misconstrued our language. The display of that date made no reference to fur coats as such. It is true that it was intended that the copy used December 5th be repeated on December 15th. Had this been done, it would have referred to the sale of fur coats. But this was not done. We are not concerned as to why this is so. The action is not based on a failure to repeat the December 5th advertisement, but the positive error of inserting the one intended for December 26th. Here what was done on December 15th is more important than why. Hence it remains a jury issue whether the language "Entire Stock of Fall and Winter Coats, Suits, Dresses," includes fur coats and other items. The instructions given have properly submitted this issue.

In this connection, the appellant was given the following instruction: "The court instructs the jury for the defendant, The Meridian Star, that if you believe from a preponderance of the evidence that the advertisement of December 15, 1946 did not obligate the plaintiffs, trading as Kay's to sell any fur coats, then you cannot award any damages to the plaintiffs because of any sales of fur coats." It is well enough to allow the jury to adjudge whether fur coats, as such, were included, yet submission of the issue whether the appellees were obligated to sell fur coats is inconsistent with the contention, still pressed, and incorporated into instructions, that appellees were not obligated by the advertisement to sell any merchandise. Further point is therefore given to Adams v. Power, supra.

Overruled.