# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CP-01411-SCT

*GEORGE W. HEALY, IV AND GEORGE W.*
*HEALY, IV & ASSOCIATES, PLLC*

*v.*

*AT&T SERVICES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2021 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | GEORGE W. HEALY, IV |
| | WILLIAM HARRY ECKERT |
| | JARRETT TYLER COX |
| | ANTHONY ROBERT LIBERATO |
| | JESSICA B. McNEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE W. HEALY, IV |
| ATTORNEY FOR APPELLEE: | JESSICA B. McNEEL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/01/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     George W. Healy IV (George) and George W. Healy IV & Associates, PLLC (Healy PLLC) sued AT&T Services, Inc. for breach of contract due to AT&T's reassignment of a 1-800 telephone number. The chancellor ruled that AT&T had breached the contract with Healy PLLC but only awarded nominal damages. Also, the chancellor awarded Healy PLLC sanctions in the form of attorneys' fees and expenses for a discovery violation under Mississippi Rule of Civil Procedure 37(c). Healy PLLC appeals the award of damages and

sanctions. This Court affirms the award of damages and reverses and remands the award of sanctions.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2016, Healy PLLC switched its phone services to AT&T. Healy PLLC transferred the firm's telephone numbers and existing 1-800 number to AT&T.

¶3.     Then, in December of 2017, AT&T contacted Healy PLLC to discuss the upgrade of its services. After the upgrade, AT&T would cause Healy PLLC's telephone lines, including the 1-800 number, to ring through to Healy PLLC's main line. The test of the phone numbers during this installation indicated that the upgrade was successful. George testified that, between 2017 and 2020, Healy PLLC paid AT&T more than $21,000 for the upgrade, which include a broadband package and telephone services.

¶4.     In January 2019, George received a phone call from an attorney friend who informed him of a possible problem with Healy PLLC's 1-800 number. As a result, George and Healy PLLC learned that the recent upgrade did not properly incorporate the 1-800 number. George called the 1-800 the number and learned that it had been reassigned to a medical provider. Healy PLLC's 1-800 number had been cancelled in July 2018 without notice.

¶5.     In February 2019, George and Healy PLLC filed a complaint for declaratory judgment, damages, and injunctive relief against AT&T. The complaint alleged that AT&T breached the contract by "intentionally or negligently cancelling [the] 1-800 number[.]" The complaint demanded an award of damages for the deprivation of services, lost profits and business opportunities, damage to business reputation, and money spent on advertisements

2

using the 1-800 number.[1] The complaint asked for a judgment in the amount of $20,000, which was the amount paid to AT&T over the three-year period that was to include the 1-800 number.

¶6. As a result of a discovery violation, Healy PLLC also filed a motion for sanctions against AT&T under Mississippi Rules of Civil Procedure 36 and 37. In September 2019, AT&T filed an interrogatory response that stated that a Healy PLLC employee canceled the 1-800 number. Then, in April 2021, Stacy Batiste, AT&T's sales manager, testified as AT&T's Mississippi Rule of Civil Procedure 30(b)(6) designee in a deposition. In the deposition, Batiste admitted that AT&T unilaterally cancelled and reassigned the 1-800 number. AT&T later amended its interrogatory responses to correct this response.

¶7. Healy PLLC's motion for sanctions claimed that Healy PLLC expended significant unnecessary time, effort, and expense to prove that AT&T's initial discovery responses were false. The chancellor agreed and found that AT&T's failure to admit its cancellation of the 1-800 number was "not reasonable." The chancellor then ordered AT&T to pay a portion of Healy PLLC's attorneys' fees under Rule 37(c).[2]

---

[1] Healy PLLC asserts that "[i]n addition to money spent advertising a phone number that did not work, [Healy PLLC] also suffered monetary losses from clients who tried to contact him and would have hired" him provided they could make contact. In total Healy [PLLC] suffered "A. Inconvenience and annoyance caused by the deprivation of services; B. Loss of profits, business opportunities, and contacts; C. Damage and harm to business reputation; D. Money spent on advertising the 1-800 number."

[2] Healy PLLC submitted its time records as evidence to determine the amount of attorneys' fees and expenses to award and asked for $18,947.50. The time records indicated that work has been performed by George, a paralegal, and an associate attorney. The time records asked the chancellor to apply Healy PLLC's standard billing rates–$75 an hour for a paralegal and $235 an hour for the attorneys.

¶8.     After a bench trial, on November 20, 2021, the chancellor rendered a decision in a

letter sent to the parties.  The chancellor ruled:

> The Court finds by a preponderance of the evidence that Defendant did in fact
> cancel the 1-800 number and, as a result, breached its contract with Plaintiff.
> While it is certainly the case that even when ". . . the amount of the damages
> are not capable of an exact and accurate proof" and that it is only necessary
> that ". . . the evidence-with such certainty . . . lay(s) a foundation which will
> enable the trier of fact to make a fair and reasonable estimate of the amount of
> damages," *Cane v. Mid-South Pump Co.*, 458 So. 2d 1048, 1050 (Miss.
> 1984), it is equally true that "(i)n Mississippi, a party may recover for loss of
> future profits in a breach of contract action so long as such profits are proved
> with reasonable certainty, and not based on mere speculation." *Lovett d.b.a.
> Dixie Dandy v. E. L. Garner, Inc.*, 511 So. 2d 1346, 1353 (Miss. 1987).
>
> There is no doubt that Defendant breached the contract with Plaintiff to
> provide 1-800 service and the Court so finds. Plaintiff, however, to recover
> more than nominal damages for the breach, must show a loss of profit and that
> the breach was the causation of the loss. Additionally, Plaintiff must do so with
> reasonable certainty as to the amount and not base an amount on mere
> speculation. Plaintiff asserts his loss due to the breach approximated $500,000.
> He has attempted to prove such claim through the use of tax returns and his
> own testimony. There has been introduced in addition to his testimony and tax
> returns various advertisements. But, as the Defendant has pointed out, all
> advertisements, as well as Plaintiffs business card, list numerous ways to
> contact him. Evidence simply does not exist to show any decrease in earnings
> was due to the loss of the 1-800 number. To find same one would have to enter
> into a world where "reasonable certainty" was replaced by "mere speculation."
> This the law permits not. Plaintiff is awarded $500.00 as nominal damages for
> Defendant's breach.
>
> Defendant initially asserted that an employee of Plaintiff canceled the 1-800
> number and denied in a request for admission it had been the party to fail to
> provide Plaintiffs his 1-800 number. This, of course, was not accurate,
> resulting in Plaintiff expending time and effort to prove Defendant actually
> was the breaching party. Rule 37(c), MRCP, provides Plaintiff may be
> awarded expenses including attorney fees and requires the Court to so order
> same unless the Court finds the failure to admit is reasonable. This the Court
> cannot so find. Plaintiff is entitled to expenses related to having to prove this
> in the sum of $912.50, consisting of 9.8 hours of paralegal time at $75 per hour
> and 7.1 hours of the attorney associate's time at a rate of $125 per hour which
> the Court finds to be a reasonable rate.

4

Plaintiff also seeks an award of attorney fees for work he has done because of Defendant's denial of the request. The Court has been unable to find a Mississippi case on this issue. However, limited liability corporations are of relatively recent vintage. Plaintiff argues he, as an attorney, represents the LLC bearing his name and, thus, should be entitled to attorney fees. Pro Se litigants are not entitled to an award of attorney fees. Plaintiff would not have been entitled to same prior to the creation in this state of LLCs. The Court finds that simply by the creation of a law firm LLC one cannot be awarded what a sole practitioner would be prohibited from being awarded. Therefore, Plaintiffs request for attorney fees for himself is denied.

¶9. On December 17, 2021, the chancellor executed a final judgment "in favor of the Plaintiff in the amount of $2,122.50, plus Rule 54 costs." The amount of the final judgment included the award of nominal damages of $500 and the award of sanctions of $1,622.50. Healy PLLC appeals this judgment.

## DISCUSSION

¶10. This appeal considers two issues. First, Healy PLLC challenges the chancellor's decision to award only nominal damages of $500 for AT&T's breach of contract. Second, Healy PLLC challenges the chancellor's decision to exclude George's attorneys' fees in the award of sanctions.

> I. *Chancellor's Award of Nominal Damages for AT&T's Breach of Contract*

¶11. Healy PLLC frames this issue as follows—"Did the trial court ignore the weight of substantial, uncontroverted evidence when awarding Plaintiffs only $500 in nominal damages after Plaintiffs' 1-800 number was terminated without Plaintiffs' knowledge, in breach of the contract?"

¶12. This Court reviews a chancellor's findings for abuse of discretion. *Lane v. Lampkin*, 234 So. 3d 338, 345 (Miss. 2017). A chancellor's findings of fact will not be disturbed

5

"when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Id.* at 345-46 (alteration in original) (internal quotation mark omitted) (quoting *Lane v. Lampkin*, 175 So. 3d 1222, 1227 (Miss. 2015)). The assessment of damages is also a finding of fact. *Id.* at 346.

¶13.    "The court's purpose in establishing a measure of damages for breach of contract is to put the injured party in the position where she would have been but for the breach." *Theobald v. Nosser*, 752 So. 2d 1036, 1042 (Miss. 1999) (internal quotation marks omitted) (quoting *Leard v. Breland*, 514 So. 2d 778, 782 (Miss. 1987)). Here, there is no dispute that a valid contract existed between Healy PLLC and AT&T.  There is also no dispute that AT&T breached this contract by its unilateral cancellation or reassignment of the 1-800 number. Mississippi law provides that

> "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed."

*Id.* (quoting *J.O. Hooker & Sons, Inc. v. Roberts Cabinet Co.*, 683 So. 2d 396, 405 (Miss. 1996)).

¶14.    Here, the complaint asked for a damage award of $20,000.  The complaint also alleged that "[i]n addition to money spent advertising a phone number did not work, Healy [PLLC] also suffered monetary losses from clients who tried to contact him and would have hired" provided they could make contact. In total, Healy PLLC suffered "A. Inconvenience and annoyance caused by the deprivation of services; B. Loss of profits, business opportunities,

6

and contacts; C. Damage and harm to business reputation; D. Money spent on advertising the 1-800 number."

¶15.    The chancellor ruled that he found no evidence that the breach of contract was the cause of Healy PLLC's loss of profits. To recover for loss of future profits, plaintiffs must show: (1) reasonably certain proof of the existence of lost profits; and (2) that it is reasonably certain that the lost profits are due to the alleged breach. *Mo. Bag Co. v. Chem. Delinting Co.*, 214 Miss. 13, 58 So. 2d 71, 75-76 (Miss. 1952).  Further, lost profits must be "proved with reasonable certainty, not based on speculation or conjecture." *Lovett v. E.L. Garner, Inc.*, 511 So. 2d 1346, 1353 (Miss. 1987). "There are no guidelines set in stone specifying the degree of certainty that we require of parties in proving loss of future profits." *Id.* at 1353. But

> . . . [W]here it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence—with such certainty as the nature of the particular case may permit—lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.

*Cain v. Mid-S. Pump Co.*, 458 So. 2d 1048, 1050 (Miss. 1984) (alterations in original) (quoting 22 Am. Jur. 2d *Damages* § 25 (1965)).

¶16.    The chancellor found that Healy PLLC did not prove lost profits to a reasonable degree of certainty:

> He has attempted to prove such claim through the use of tax returns and his

7

own testimony. There has been introduced in addition to his testimony and tax returns various advertisements. But, as the Defendant has pointed out, all advertisements, as well as Plaintiffs business card, list numerous ways to contact him. Evidence simply does not exist to show any decrease in earnings was due to the loss of the 1-800 number.

¶17. In this appeal, Healy PLLC argues that it met this standard through the best evidence available. Healy PLLC claims that it presented sufficient proof of damages through (a) George's uncontroverted testimony, (b) Healy PLLC's Quickbook reports from 2017-2018, and (c) George's 2019 tax return.[3] "This Court has recognized past earnings as a sufficient method to estimate lost profits." *Warren v. Derivaux*, 996 So. 2d 729, 737 (Miss. 2008) (citing *Ishee v. People's Bank*, 737 So. 2d 1011, 1013 (Miss. Ct. App. 1998)) (finding that production reports from two years before and two years after, in addition to the estimated average of policies lost, was enough to create "ample evidence upon which to estimate lost profits to a reasonable certainty"); *see also* *Parker Tractor & Implement Co. v. Johnson*, 819 So. 2d 1234, 1239-40 (Miss. 2002) (the testimony of a farmer and his accountant was the best evidence available to determine lost profits). Based on George's 2019 tax returns, however, George's income increased significantly from 2018 to 2019. This tax return does not evidence a loss of profits due to the breach of a contract for a 1-800 number.

¶18. In *Benchmark Health Care Center, Inc. v. Cain*, the Court of Appeals considered the issue of what proof is necessary to get beyond speculation. *Benchmark Health Ctr., Inc.*

---

[3] In the record before this Court, the Quickbook reports are illegible. The tax records consist of George's 2019 tax returns. These tax returns indicate that, in 2018, George made $92,945 from Healy PLLC and the practice of law, and, in 2019, George made $431,774 from Healy PLLC and the practice of law. When asked at trial for his documentation on lost profits, George testified that AT&T never requested any discovery in addition to these documents.

*v. Cain*, 912 So. 2d 175, 180 (Miss. Ct. App. 2005). The court looked at the evidence offered to support an award of damages for lost profits. *Id.* The plaintiff's "principal evidence presented at trial on the issue of lost profits was the testimony of [the plaintiff's] accountant . . . , and a report that he prepared regarding his lost-profit computations." *Id.* at 179. The defendant argued that this was "purely speculative." *Id.* at 180. The accountant was cross-examined about "his estimation of lost profits" and admitted that it involved "a certain amount of speculation, but that the report he prepared was based upon the specific evidence of two previous months of [the plaintiff]'s operations with Benchmark. *Id.*

¶19.    That court determined that the accountant's testimony and report "reflected a fair and reasonable estimate of [the plaintiff]'s projected lost profits." *Id.* Then, the court reasoned:

> While some amount of speculation was necessarily involved in a computation of lost profits that had never actually been realized, [the accountant]'s report and testimony were projected from actual profits realized from November 1, 1997, through December 31, 1997. Extrapolating actual past profits to reach a figure that represented anticipated future profits was a reasonably certain method of proving lost profits. As the trial court judge stated, Benchmark's argument misuses the word "speculation." Some speculation must be involved in an attempt to compute unrealized profits.
>
> Benchmark argues that [the plaintiff] did not provide documentation for [the accountant]'s preparation of the report estimating lost profits. We find that, at trial, [the accountant] provided documentation explaining his methodology and testified as to his method of arriving at the lost profits figure of $99,086.37. He stated that the estimate:
>
> > represents potential profits for this particular account for [the plaintiff] had it gone to the end of the contract term. And it was based on a two-month period, which was a realistic estimate of their revenues that were going to be generated by that account. And we took the direct expenses of the employees and the labor that was on that account and allocated overhead and came to a bottom line to get to a profit figure for that particular Benchmark account. . . .

The bottom line profit figure [the accountant] arrived at for the two months was then reduced to an "estimated net income per day" figure of $892.67. This figure was then multiplied by the estimated number of days left in the . . . contract, 111 days, for a total of $99,086.37. When asked why he chose the revenue months of November and December, 1997, to compute his estimate, [the accountant] responded that those months reflected a median between the months of highest profit and the months of lowest profit. Because this descriptive documentation and testimony was presented at trial, we find that there was ample evidence for the court to examine [the accountant]'s methodology and then determine the estimate to be reasonably certain.

*Benchmark*, 912 So. 2d at 180 (footnote omitted).

¶20. Sufficient evidence to establish lost profits to a reasonable certainty requires two things. First, it requires a clear methodology that explains how the breach of contract caused the plaintiff to lose damages. *Id.* Second, it requires documentation that will establish and provide an underlying basis to support the award of lost profits. *Id.* It is often ideal that the party that asks for lost profits have their accountant, banker, or a person with tax or financial knowledge or expertise testify about the lost profits. The expert witness must present a clear methodology that explains how the breach of contract caused the plaintiff to lose damages and point to the supporting documentation that provides an underlying basis for the award of lost profits. Such was not the case here.

¶21. There is no dispute that AT&T canceled the Healy PLLC's 1-800 number in July 2018. Thus, the breach occurred in July 2018. Healy PLLC learned of the lost use of the 1-800 number about six months later, in January 2019.

¶22. Healy PLLC makes an interesting argument in its brief:

The fallacy of the [chancellor]'s reasoning can be illustrated through the example of a taco stand that is hit by a vehicle and no longer able to sell tacos. How can this taco stand prove its damages, when it cannot show how many tacos it would have sold that day, particularly from phone orders versus in

person orders? Clearly, whoever hit the taco stand should not escape liability for causing undisputed damages and loss of taco sales, simply because the stand cannot prove how many sales it would have made that day.

¶23. As discussed above, a clear methodology that explains how the breach of contract caused the plaintiff to lose damages and supporting documentation is ideal. ***Cain***, 912 So. 2d at 180. Using Healy PLLC's analogy, the taco stand owner would have several ways to establish sufficient proof of her damages for lost profits. First, the taco stand owner could testify from her financial records or tax returns to show her loss of income by comparing her net income from the prior month, quarter, or year to her reduction in income as a result of the collision. Second, the taco stand owner could offer expert witness testimony from her accountant, banker, or other tax or financial professional to establish a clear methodology of how the breach of contract caused the plaintiff to lose damages and documentation to prove what profits were lost. The expert could use tax returns, financial records, income, and balance sheet financial records provided to her banker or other similar records to establish the clear methodology of lost profits and the necessary documentation.[4]

¶24. Therefore, we cannot find that the chancellor abused his discretion by ruling that the "[e]vidence simply does not exist to show any decrease in earnings was *due to the loss of the 1-800 number*." (Emphasis added.) Therefore, we affirm the chancellor's award of $500 in

---

[4] If the taco stand owner claimed breach of contract for a cancellation of her phone line, the taco stand owner or her expert could use the previously identified records to compare her average versus actual profits and calculate how much was lost when there was no phone line available. Damages for lost profits does not require "certainty"; instead, it requires "reasonable certainty" or evidence that "reflect[s] a fair and reasonable estimate of [the plaintiff's] projected lost profits." ***Benchmark Health Care Ctr. Inc.***, 912 So. 2d at 180.

nominal damages.

¶25.   Healy PLLC also argues that it was error for the chancellor to not address any of the other requests for damages (i.e., inconvenience and annoyance caused by the deprivation of services, damage and harm to business reputation, or money spent on advertising the 1-800 number).

¶26.   George testified that Healy PLLC spent approximately $20,000 a year on advertising that included the 1-800 number. This Court has recognized that an erroneous advertisement can lead to damages. *Meridian Star v. Kay*, 207 Miss. 78, 41 So. 2d 30, 34, *suggestion of error overruled*, 207 Miss. 78, 41 So. 2d 746, 748 (1949) (affirming the liability of a publisher for newspaper advertising an erroneous sale; remanding for the question of damages); *Meridian Star v. Kay*, 211 Miss. 536, 52 So. 2d 35, 39 (1951) (affirming jury instructions on damages limited to the first day of negligent advertisement).

¶27.   AT&T argues that its breach of contract did not cause advertising damages of $20,000.  In fact, the testimony at trial indicated that all of the advertisements also included Healy PLLC's main phone number and facsimile number.  As a result, the chancellor determined that the advertisements  included "numerous ways to contact" Healy PLLC. Thus, Healy PLLC was not damaged because the 1-800 number was not sending calls to Healy PLLC.

¶28.   As to the other damages, we cannot find the chancellor abused his discretion by only awarding nominal damages.  While there was testimony from an advertisement and marketing expert, the expert only testified that "the 800 number is critical in searches for [potential clients] to call . . . to solicit the services or retain [Healy PLLC]."  This expert,

12

however, did not provide any explanation of how Healy PLLC was damaged, the amount of damage or any documentation to support the award of damages. We affirm the chancellor's award of $500 in nominal damages.

>  II.     *Chancellor's Award of Sanctions*

¶29.   Healy PLLC frames this issue in two parts, as follows, which we repeat verbatim:

>  A.     Can an attorney representing an LLC of which he is a member be awarded attorneys' fees for that representation, especially when those fees are mandated under Rule 37 as a sanction for the opposing party's intentional conduct?

>  B.     Did the trial court ignore the weight of substantial, uncontroverted evidence when awarding Plaintiffs only $912.50 in legal expenses under Rule 37 for AT&T's refusal to admit it canceled the 1-800 number, when it required Plaintiffs to conduct two years of intensive litigation to establish this fact?

¶30.   This issue simply challenges the chancellor's decision to exclude George's time and attorneys' fees from the sanctions award because he was a *pro se* litigant.

¶31.   This Court reviews the "trial court's decision whether or not to impose sanctions for alleged discovery violations" under an abuse of discretion. **Rhoda v. Weathers**, 87 So. 3d 1036, 1038 (Miss. 2012) (citing **Jones v. Jones**, 995 So. 2d 706, 711 (Miss. 2008)). "The trial court's decision should be affirmed unless a reviewing court has a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" **Id.** (quoting **Jones**, 995 So. 2d at 711).

¶32.   Rule 37(c) (emphasis added) provides:

>  If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the

reasonable expenses incurred in making that proof, including reasonable attorneys' fees. The court shall make the order unless it finds that (1) the request was held objectionable under Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

¶33. AT&T's interrogatory response unequivocally stated that an employee at Healy PLLC cancelled the 1-800 number. Then, two years later, through AT&T's Rule 30(b)(6) deposition, AT&T admitted that this previous interrogatory response was false. AT&T does not challenge this finding. Indeed, AT&T clearly violated Rule 37(c). As a result, the chancellor correctly found that AT&T did not meet any of the allowed exceptions in Rule 37(c) and had been unreasonable. The chancellor correctly awarded sanctions and attorneys' fees under Rule 37.

¶34. Healy PLLC challenges only whether George's time should have been excluded from the award. Healy PLLC submitted evidence of the number of hours worked and the hourly rate of its paralegal and its attorneys, George and an associate attorney. The chancellor used this information to award Healy PLLC attorneys' fees in the sum of $1,622.50, which included the paralegal's time and the associate attorneys' time reduced to $125 per hour. The chancellor ruled, however, that George was a *pro se* litigant and, as such, was not entitled to attorneys' fees under Rule 37.

¶35. The complaint was filed in the name of George, individually, and Healy PLLC. There was no claim, however, that George had a contract with AT&T. The complaint may have alleged that George was damaged individually, but as discussed above, there was no evidence submitted to support such claim.

14

¶36.    Upon the creation of an LLC or PLLC, the company becomes a distinct legal entity, separate from the identity of the owner-members. Miss. Code Ann. § 79-29-305 (Rev. 2013).

¶37.    In *Bruno v. Southeastern Services, Inc.*, 385 So. 2d 620, 622 (Miss. 1980), the Court found that a "plaintiff may not bring suit in his individual capacity to redress a wrong to the corporation."  There, the Court denied a plaintiff, the sole stockholder, damages for alleged breach of contract to the corporation. *Id.* The Court held:

> "...
> the basis of the suit in this case is wrong to the corporation and plaintiff may not bring suit in his individual capacity to redress a wrong to the corporation. The cause of action belongs solely to the corporate entity, . . . and may be asserted only by the corporation itself or by plaintiff in a representative capacity in the form of a shareholder derivative suit. The corporation is an indispensable party to such an action . . . ."
>
> The rationale for the Mississippi rule is that (1) the corporation is a separate entity and the shareholder does not have a legal interest in its property; (2) multiplicity of suits by individual shareholders will be avoided; (3) impairment to creditors' rights will be avoided since the recovery will belong to the corporation, and (4) corporate recovery benefits all shareholders equally.

*Vickers v. First Miss. Nat'l Bank*, 458 So. 2d 1055, 1060 (Miss. 1984) (first and third alterations in original) (quoting *Bruno*, 385 So. 2d at 622).

¶38.    Here, the parties to the contract were Healy PLLC and AT&T.  The damages, if any, were suffered by Healy PLLC. George's supposed claims suffered from this breach of contract were through his position as a member or employee of Healy PLLC. As a member of Healy PLLC, the lack of profits were felt second hand, and, as an employee, he might have incurred inconvenience and annoyance through the additional workload.  But George suffered neither of these as an individual. *See Bruno*, 385 So. 2d at 622 (finding that "the

15

action belongs to the corporation and not the individual stockholders whose rights are merely derivative").

¶39. George's participation in this suit, in his capacity as an individual member, has no basis. In fact, the chancellor was correct not to award George any damages. Therefore, we affirm the chancellor's judgment that awarded no damages or sanctions to George, individually.

¶40. Healy PLLC, on the other hand, had the right to claim attorneys' fees for George's work. The United States Supreme Court has ruled that "an organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono*, and thus, there is always an attorney-client relationship." ***Kay v. Ehrler***, 499 U.S. 432, 436 n.7, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991).

¶41. Healy PLLC argues that the denial of attorneys' fees for George could have a negative effect on desired public policy and future court proceedings. AT&T disagrees and relies heavily on ***Kay***. ***Id.*** at 432. In ***Kay***, the *pro se* attorney-litigant was pursuing attorneys' fees normally awarded upon a successful civil action case. ***Id.*** at 437. The Court discussed that the overriding statutory interest was ensuring "the effective prosecution of meritorious claims." ***Id.*** While a *pro se* attorney has the legal knowledge, they are at "a disadvantage in contested litigation" as he cannot appear as a witness and is deprived the judgment of an independent third party. ***Id.*** The Court found that an attorney representing himself *pro se* in a successful civil rights action may not be awarded "a reasonable attorney's fee as part of the costs" under 42 U.S.C. § 1988. ***Kay***, 499 U.S. at 433 (internal quotation marks omitted).

¶42. A distinction is, however, apparent here. Based on the Mississippi Limited Liability

Act, we recognize the separate entity status and independence of a limited liability company. Miss. Code Ann. § 79-29-305. George may be a member of Healy PLLC. He could be the sole member of Healy PLLC. George's legal work, however, was performed in the capacity of an employee of Healy PLLC, not on his individual behalf. We find no reason under Mississippi law to make a distinction between George, the paralegal, and the associate attorney.

¶43. Here, the attorneys' fees were sanctions for AT&T's breach of its duty to the court. M.R.C.P. 37(c). Sanctions are to punish the party and are vital to keep the court process running smoothly. If this Court denies attorneys' fees awarded as sanctions, it would create a precedent that could allow parties to purposely or negligently lie to the court and disrupt the discovery process when against a *pro se* litigant, or in this case, a firm representing itself. Accordingly, we find that the chancellor abused his discretion by denying Healy PLLC's award of attorneys' fees for the hours worked by George.

¶44. The chancellor also denied Healy PLLC's rate of $235 for the associate attorney. While, this Court has awarded higher rates for new attorneys, $125 per hour for an associate is within the norm. *See* **Obert L. Grp., P.A. v. Holt**, 328 So. 3d 622, 267 (Miss. 2021) (finding $175-250 reasonable for experienced attorneys and $150 for a first-year attorney in Jackson estate administration).

¶45. The chancellor did not address the appropriate rate for George's fees. This Court therefore reverses the chancellor's decision to exclude George's fee and remands this matter to the chancellor for the chancellor to examine the appropriate amount of hours, work performed, and additional fees due to Healy PLLC based on George's time records.

## CONCLUSION

¶46.    This Court affirms the chancellor's award of only nominal damages to Healy PLLC. This Court reverses the trial court's exclusion of George's fees in the award of sanctions. We remand this case to the chancellor to determine the exact amount of the sanctions award consistent with this opinion.

¶47.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**